COMMONWEALTH of Pennsylvania,
Appellant

v.

Hosea BOYD, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 11, 2011.
Filed April 7, 2011.

Grady J. Gervino, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Paul J. Hetznecker, Philadelphia, for appellee.

BEFORE: STEVENS, P.J., FREEDBERG, and PLATT *, JJ.

OPINION BY FREEDBERG, J.

This matter is before the Court on the appeal of the Commonwealth of Pennsylvania from the order entered on December 18, 2009, by the Court of Common Pleas of Philadelphia County, granting Hosea Boyd's ("Appellee's") motion to suppress evidence. We reverse.

On November 24, 2008, shortly after midnight, two Philadelphia Police Department officers were patrolling a high crime area when they observed a 2003 Buick Rendezvous, driven by Appellee, stopped at an intersection despite having a green light. Appellee sat through two additional green lights, while repeatedly flashing his high beam lights and impeding traffic. Thereafter, a man approached the vehicle, got into the front passenger seat, and Appellee drove away. The officers pulled over the vehicle for impeding traffic. As they approached the vehicle, one officer saw Appellee lean over and reach into the center console. Concerned for their safety, the officers asked Appellee and his passenger to exit the vehicle so they could conduct a pat-down to check for weapons. No weapons were discovered on Appellee or his passenger. The officer then told Appellee to stand behind the car, and the officer opened the center console to check for weapons. Upon opening the console, the officer saw crack cocaine. The officer arrested Appellee and a search incident to arrest was conducted, during which a bag containing ten packets of crack cocaine was discovered in Appellee's jacket.

On December 18, 2009, a suppression hearing was held. The suppression court found that the traffic stop and pat-down were proper, but the search of the center console was impermissible. Trial Court Opinion, 5/5/2010, at 4. The suppression court stated: "[T]he officer testified that the defendant already [was] in cuffs when the officer entered the console. The court finds that the search of the vehicle and the subsequent search of the defendant were illegal." Notes of Testimony ("N.T."), 12/18/2009, at 49. Thus, the suppression court granted the defendant's motion to suppress the crack cocaine.

■ The Commonwealth raises one issue on appeal:

Where officers who had initiated a nighttime car stop of two unknown men in a high-crime area saw defendant lean over and reach into the center console of the vehicle as the officers approached him, and where the officers thereafter examined the console for weapons, finding crack cocaine, and then arrested de-

* Retired Senior Judge assigned to the Superior Court.

fendant, and, in a search incident to arrest, found additional crack cocaine, did the lower court err in suppressing defendant's drugs?

Brief for the Commonwealth, at 4. The Commonwealth argues that the trial court erred when it found that Appellee was handcuffed at the time the center console was searched because this factual finding was not supported by the record. Further, the Commonwealth asserts that the search of the center console was proper regardless of whether Appellee was handcuffed.

This Court has summarized the proper scope and standard of review when reviewing the grant of a motion to suppress as follows:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Byrd,* 987 A.2d 786, 790 (Pa.Super.2009), citing *Commonwealth v. Deck,* 954 A.2d 603, 606 (Pa.Super.2008).

On direct examination, the officer described the chain of events that occurred following the stop of Appellee's vehicle as follows:

> A   He stopped. We exited our vehicle, myself and my partner. Upon approach his vehicle was off to the right side, he was leaning in the center console area, inside the center console leaning over to that side. So upon the approach of the window I identified ourselves, myself and my partner, asked the defendant was there anything in this vehicle we needed to be aware of. He stated, no. At that time I asked the defendant to step from the vehicle.
>
> Q   Why?
>
> A   When I saw him going into that and leaning over and going into that console for the safety of myself and my partner I didn't know if anything was in there to hurt us. I wanted to make sure nothing was in there.
>
> Q   What happened next?
>
> A   I asked him to step from the vehicle and did a pat down with negative results. I had him step to the back of the vehicle. I checked inside that console just to make sure and sitting on top was a plastic bag inside was a large chunk of an off-white chunky substance.
>
>           . . . .
>
> Q   What happened next?
>
> A   At that time I told my partner what I found. The [Appellee] was taken into custody and my partner then searched the [Appellee] and inside his jacket pocket my partner recovered in my presence a clear Ziploc bag with Apple stamped on it that contained nine yellow and one green smaller Ziploc packets all containing an off-white chunky substance alleged crack cocaine.

N.T., 12/18/2009, at 14, 16.

On cross-examination, defense counsel elicited the following testimony, which the suppression court relied on in finding that Appellee was handcuffed at the time the officer searched the center console:

> Q   Once you went back and received the rock that you recovered from the console you went back and at that point my client—by the way, when my client was taken out of the vehicle and patted down he wasn't free to leave at that point, was he?

A  No.

Q  When the passenger was taken out of the vehicle he was also not free to live [sic] at that point, was he?

A  No.

Q  When your partner searched my client after that rock had been recovered that is when the additional packets were discovered inside his jacket pocket; is that correct?

A  That is correct.

Q  Was he in the same position he had been in when you conducted your frisk, meaning, the same location on the driver's side of the vehicle?

A  No. He was towards the back of the vehicle at that time.

Q  When those packets were recovered where was the passenger; do you remember that?

. . . .

A  He was right there off to the side of the vehicle.

Q  You indicated you observed your partner recover those items in your presence?

A  Correct.

Q  So at that point those items were recovered obviously my client was in cuffs, correct?

A  Yes.

*Id.* at 23–25.

Based on the entire testimony from the officer, we conclude that Appellee was not handcuffed at the time the officer searched the center console. In his initial testimony, the officer stated Appellee was not taken into custody until after the crack cocaine was found in the console. On cross-examination, defense counsel asked about the recovery of the packets of crack cocaine in Appellee's jacket, which were discovered after the crack cocaine was found in the center console of the vehicle and after Appellee had been placed under arrest. Thus, the officer answered "yes" as to whether Appellee was handcuffed during the search incident to arrest; the record does not establish that Appellee was also handcuffed during the search of the vehicle, which took place prior to Appellee's arrest.

We must now determine whether the search of the center console was proper. "When a police officer lawfully stops a motorist for a violation of the Pennsylvania Motor Vehicle Code, the officer is permitted to ask the drive to step out of the vehicle 'as a matter of right.'" *Commonwealth v. Parker*, 957 A.2d 311 (Pa.Super.2008), *appeal denied*, 600 Pa. 755, 966 A.2d 571 (2009). Further, "an officer has the right to conduct a weapons search of an automobile if there is a reasonable belief that the suspect is dangerous and that the suspect might gain immediate control of weapons." *Commonwealth v. Austin*, 428 Pa.Super. 466, 631 A.2d 625, 627 (1993). In *Commonwealth v. Morris*, 537 Pa. 417, 644 A.2d 721 (1994), *writ of certiorari denied*, 513 U.S. 1031, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994), the Pennsylvania Supreme Court, discussing *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), explained:

> "[A]n officer could conduct a warrantless search of those portions of the passenger compartment of a vehicle in which a weapon could be hidden when the circumstances were such that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of the others was in danger," so long as this belief was based on specific articulable facts."

*Morris*, 644 A.2d at 723.

In *Commonwealth v. Murray*, 936 A.2d 76 (Pa.Super.2007), *reargument and reconsideration denied*, 2007 Pa.Super. LEXIS 6052 (Pa.Super.2007), police officers were patrolling a known drug area at night when they observed the appellant make a right turn without signaling. The officers

pulled over the vehicle for the traffic violation. Because the vehicle had tinted windows, the officers could not see exactly what occurred, but observed "a lot of movement in the vehicle." One of the officers conducted a pat-down of the appellant and found no weapons. Still concerned about safety, the officer then checked the area around where the appellant had been sitting, including opening an armrest. In the armrest, the officer discovered a loaded firearm. The trial court denied the appellant's motion to suppress based on his allegation that the officer did not have a sufficient basis to justify searching the interior of the vehicle. This Court found that the area and time of the stop, the tinted windows, and the excessive movement in the vehicle justified the officers' concern for safety and the subsequent pat-down and vehicle search.

In *In re O.J.*, 958 A.2d 561 (Pa.Super.2008), *petition for allowance of appeal denied,* 605 Pa. 688, 989 A.2d 918 (2010), this Court reversed and remanded an order suppressing drugs found after a traffic stop. The minor appellee was observed speeding and running a red light at night. When the officers activated a siren to pull appellee over, the appellee initially disregarded the signal and continued to drive. When the appellee pulled over, the officers observed "a lot of movement of the arms and the hands in the center area of the vehicle which would have been the console." *Id.* at 563. The appellee was removed from the vehicle, and a pat-down was conducted. No weapons were discovered. The appellee was then placed in the officers' patrol car, and one of the officers conducted a search of the console in appellee's vehicle, where the movement had been observed. In the console, the officer discovered cocaine.

This Court found that the search of the vehicle was permissible because the stop occurred at night; the officers observed

the appellee driving improperly; the appellee failed to stop immediately; the appellee's hand movements over the console; and the officers confined the search of the vehicle to the area where they observed the hand movements. Further, this Court emphasized:

> The heightened risk of danger to police officers during roadside encounters should be contrasted with the lessened expectation of privacy that a citizen possesses with respect to his vehicle:
>
> > One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view.

*Id.* at 565, *quoting New York v. Class,* 475 U.S. 106, 111–112, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). In addition, this Court also specifically disagreed with the suppression court's finding that the search was unnecessary because the appellee was secure in the police car. This Court explained that because the officers were not planning on arresting the appellant for a traffic violation, "upon his return, Appellee easily could have accessed a weapon in the console to use against" the officers. *Id.* at 566; *see also Commonwealth v. Rosa,* 734 A.2d 412 (Pa.Super.1999).

The instant matter is analogous to *Murray* and *O.J.* The officers were patrolling a high crime area late at night. They permissibly pulled over Appellee after they observed a traffic violation. Because of his previous suspicious behavior—waiting through several green lights, flashing his high beams repeatedly, and his movement involving the center console after being pulled over—the officers were concerned

for their safety. Thus, they conducted a valid pat-down for weapons. The limited search of the center console of the vehicle was also justified because of the time and area of the stop and Appellee's movements around the console. As in *O.J.*, there is no indication that Appellee would be arrested for the traffic violation, and thus, he would be able to return to his vehicle and access any possible weapons secreted in the console. Further, contrary to what the suppression court concluded, we find that Appellee and his passenger were not restrained at the time of the search of the center console, creating more risk for the officers.

Order reversed. Matter remanded for proceedings consistent with this Memorandum. Jurisdiction relinquished.