J-S35040-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TYSHAUN DEVOE MICKEL | |
| Appellee | No. 47 WDA 2017 |

Appeal from the Order Entered December 8, 2016
In the Court of Common Pleas of Mercer County
Criminal Division at No(s): CP-43-CR-0001438-2016

BEFORE: LAZARUS, J., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED NOVEMBER 22, 2017**

The Commonwealth of Pennsylvania appeals from the order, entered in the Court of Common Pleas of Mercer County, granting the pretrial motion to suppress filed by Appellee Tyshaun Devoe Mickel ("Mickel"). After our review, we conclude that Officer Matthew Lehman did not possess an "articulable and objectively reasonable belief that [Mickel was] potentially dangerous," and, thus the search of the locked glove compartment in his vehicle exceeded the scope of ***Michigan v. Long***, 463 U.S. 1032, 1049-51 (1983). We, therefore, affirm the suppression court's order.

Mickel was arrested on July 30, 2016, and charged with the crimes of possession with the intent to deliver a controlled substance, possession of a

_____

[*] Former Justice specially assigned to the Superior Court.

controlled substance, possession of drug paraphernalia and various summary traffic offenses. These charges arose from the stop and subsequent search of the motor vehicle Mickel was operating on June 30, 2016, in the city of Sharon.

Following a preliminary hearing on August 26, 2016 before Magisterial District Judge Dennis Songer, the charge of possession with the intent to deliver was withdrawn and Mickel was held for trial on the remaining charges. Mickel was arraigned on October 25, 2016. On December 7, 2016, a hearing was held on Mickel's omnibus pretrial motion. On December 8, 2016, the suppression court granted Mickel's motion to suppress. The suppression court found that there were "no articulable facts to warrant a reasonably prudent [officer] to conclude there was a gun in the glove compartment." Trial Court Opinion, 1/27/17, at 7. The court also determined that "finding shreds of Chore Boy[1] in the vehicle does not establish probable cause to justify the search." *Id.* at 8.

The Commonwealth appealed[2] and presents two issues for our review:

_____

[1] Chore Boy is a brand name for a cleaning pad made of copper or stainless steel.

[2] Pennsylvania Rule of Appellate Procedure 311(d) permits the Commonwealth in a criminal case to appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution. *Commonwealth v. Whitlock*, 69 A.3d 635, 636 n.2 (Pa.

*(Footnote Continued Next Page)*

1. Whether the suppression court erred in concluding the search of defendant's glove compartment for officer safety exceeded the scope of a lawful search for such purpose, where the officer, who had demonstrated his legitimate and sincere concern for his safety, was entitled to search the vehicle for weapons in locations likely to contain those weapons, and which are readily accessible by the defendant, who was neither handcuffed nor under arrest and who would have had easy access to that location after returning to his vehicle?

2. Whether the suppression court erred in concluding that the search of the vehicle was not supported by probable cause to search for drugs and/or drug paraphernalia where evidence established the officer lawfully observed, among other things, the defendant's furtive movements, his nervousness, and Chore Boy scattered about the back seat of the vehicle and coming out of an eyeglasses case, and the totality of the circumstances supported a finding of probable cause to search the vehicle for drugs and/or drug paraphernalia?

Commonwealth's Brief, at 4-5

> When reviewing an [o]rder granting a motion to suppress we are required to determine whether the record supports the suppression court's factual findings and whether the legal conclusions drawn by the suppression court from those findings are accurate. In conducting our review, we may only examine the evidence introduced by appellee along with any evidence introduced by the Commonwealth which remains uncontradicted. Our scope of review over the suppression court's factual findings is limited in that if these findings are supported by the record we are bound by them. Our scope of review over the suppression court's legal conclusions, however, is plenary.

*(Footnote Continued)* ───────────

Super. 2013). Here, the Commonwealth's notice of appeal includes the required certification. ***See*** Notice of Appeal, 1/5/17.

***Commonwealth v. Gutierrez***, 36 A.3d 1104, 1107 (Pa. Super. 2012)

(quoting ***Commonwealth v. Henry***, 943 A.2d 967, 969 (Pa. Super. 2008)).

***See Commonwealth v. Boyd***, 17 A.3d 1274, 1276 (Pa. Super. 2011).

Officer Lehman, a patrolman with the Sharon Police Department, was
on duty in the early morning hours of June 30, 2016. At approximately 2:00
a.m. on July 30, 2016, he was patrolling the area near the Shenango
Campus of the Pennsylvania State University. After observing a dark-
colored sedan with an expired registration, Officer Lehman proceeded to
stop the vehicle and saw "the driver making movements into the center
console area, and also reaching around within the vehicle." N.T.
Suppression Hearing, 12/7/16, at 4-5. Officer Lehman called for backup.
After backup arrived, Officer Lehman and his backup officer approached the
vehicle, asked Mickel to step out, and conducted a ***Terry***[3] stop and frisk.
***Id.*** at 6. Officer Lehman testified:

> A: For officer safety reasons we were concerned that he possibly
> had a weapon on his person at that time. We conducted a ***Terry***
> frisk.
>
> Q: Did you find anything on the ***Terry*** frisk?
>
> A: The only thing we found was approximately a six-inch long
> drill bit in his right pocket.
>
> Q: Then what did you do?

_____

[3] ***Terry v. Ohio***, 392 U.S. 1 (1968).

A: At that time, I conducted a quick **Terry** search of the vehicle, attempting to locate a weapon within arm's reach of the driver's seat.

**Id.** Officer Lehman did not observe any weapon in the vehicle; however, he did observe a soft eyeglasses case, with copper filaments sticking out of it.

Q: These copper filaments that you say you saw, do they have like a common name?

A: For drug purposes, Chore Boy. Also, they are used for scrubbing pots and pans and things of that nature.

* * * *

Q: Now where, this glasses case was, was that where the gentleman inside the car was reaching when you observed him, walking up to the vehicle?

A: Yes. It was slightly back behind the passenger seat, front passenger seat, easily within arm's reach of where the driver was sitting. [Officer Lehman then explained that copper filament is sometimes used in the smoking of crack cocaine].

**Id.** at 6-7.

Officer Lehman testified that he had observed Chore Boy in other drug cases. He continued:

A: I continued searching the vehicle, including the glove compartment, which I did find to be locked, retrieved the keys from the dashboard of the vehicle, and unlocked the glove box.

Q: Had you asked the defendant if you could open the glove compartment?

A: No.

Q: So you just used the keys that were there?

A: Yes.

Q: What did you find inside the glove box?

A: . . . It was a pink coin purse.

*Id.* at 9. Inside the pink opaque coin purse, Officer Lehman recovered a spoon with burn marks and residue. He also recovered from the glove box a small gold opaque container, in which he found a small baggie of pills and a bag of what he believed was crack cocaine. *Id.* at 10-11, 21.

The Commonwealth argues that the suppression court erred in concluding that the search of Mickel's locked glove box exceeded the scope of *Long*. We disagree.

First, we note that we agree with the suppression court's determination that the stop of the vehicle was lawful, as Mickel's vehicle registration was expired. We also conclude that the initial "protective search" of the vehicle was lawful. It was only when that limited weapons search turned into a search for drugs in the locked glove compartment, that the suppression court determined the search exceeded the scope of *Long*.

In *Long*, the United States Supreme Court extended the *Terry*-stop doctrine to allow for a search of those portions of the passenger compartment of a car where a weapon could be hidden. The *Long* Court stated:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible **if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons**. *See Terry*, 392 U.S. at 21 [88 S.Ct. at 1879]. "[T]he issue is whether a reasonably prudent

man would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27, [88 S. Ct. at 1883].

*Michigan v. Long*, 463 U.S. at 1049-1050 (emphasis added).

In *Commonwealth v. Morris*, 644 A.2d 721 (Pa. 1994), the Pennsylvania Supreme Court adopted the *Long* standard for assessing the constitutionality of a protective search of the interior of a vehicle for weapons. In *Morris*, the officer testified that, after he stopped the defendant's vehicle, defendant was leaning to his right and towards the floor near the center of the car. Additionally, when ordered to put his hands on the steering wheel, defendant quickly reached between his legs. The Court found these acts were consistent with an attempt to either conceal or reach for a weapon. In addition, the officer discovered a metal pipe wedged between the driver's seat and the door, which would tend to indicate that defendant might have access to other weapons in the passenger compartment. *Morris*, 664 A.2d at 723. The *Morris* Court stated:

> A review of the record reveals that under the circumstances encountered by Officer Benincasa on May 8, 1990, a reasonably prudent man would have believed his safety was compromised. . . . Under *Long*, such a reasonable belief based on specific articulable actions taken by appellant (i.e. specific articulable facts) entitles an officer to conduct a search of those portions of the passenger compartment of a suspect's vehicle in which a weapon could be placed. Thus, the bag in question was properly searched since it was large enough to hold a weapon. Indeed, had Officer Benincasa allowed appellant to return to his vehicle without searching the bag in question, he would have been taking a grave risk that appellant would remove a weapon from the bag and use it. Our constitutional safeguards do not require an officer to gamble with his life. Thus, the search in question did not violate appellant's right against unreasonable searches

under the Fourth Amendment of the U.S. Constitution or Article I, § 8 of the Pennsylvania Constitution.

*Id.* at 723-24.

The issue before us is properly framed as whether the search of the locked glove box was supported by reasonable suspicion that Mickel may have been armed and dangerous. On cross-examination, Officer Lehman acknowledged that he initiated the traffic stop because of an expired registration, that he had no information prior to approaching the vehicle that Mickel might be armed and dangerous, and that he did not have any information that Mickel was involved in any kind of criminal activity. N.T. Suppression Hearing, *supra* at 12. Officer Lehman used a flashlight to look inside Mickel's vehicle, and he stated that he saw no weapons. *Id.* at 13. He also acknowledged that his "search of the vehicle [was] to see if there were any weapons within reach[.]" *Id.* at 15. Additionally, unlike in *Morris*, on cross-examination, Officer Lehman stated that he looked under the front seat and between the front seat and the console, and he found no weapons:

> Q: Now, you looked under the front seat and didn't find anything, correct?
>
> A: Correct.
>
> Q: Did you look in between the front seat – between the front seat and the cons[ole]? Did you check that area?
>
> A: Yes, sir.
>
> Q: Okay. Did you find anything?
>
> A: No, sir.

Q:     Did you check the center cons[ole] where you thought that he had been reaching?

A:     If I remember correctly, sir, I did not actually open the center cons[ole], no

Q:     Okay.  And you found no weapons [i]n the interior of this vehicle?

A:     No, sir.

*Id.* at 16.

Officer Lehman did all he could to assure that there were no weapons on Mickel's person or in the driver, passenger and back seat compartments of the vehicle.  There was no testimony that this stop occurred in a high crime area or that Mickel did not immediately stop his vehicle.  There was no testimony of "extreme nervousness" or unusual behavior.  Although Officer Lehman testified that he observed Mickel "making movements into the center cons[ole] area" as he approached Mickel's vehicle after the stop, *id.* at 5, the subsequent protective search obviously dispelled any concerns regarding that movement since Officer Lehmann chose not to open the center console.  As the *Long* Court stated: "The sole justification of the search is the protection of police officers and others nearby."  *Long*, 463 U.S. at 1050 n.14 (citation and quotation omitted).  Here, Officer Lehman did not possess a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts," would reasonably warrant him in believing that Mickel was dangerous and might gain immediate control of a weapon in a locked glove box.  *Id.* at 1049-50.

Notably, Officer Lehman testified that once he found the Chore Boy, he decided he was going to open the glove box, and that at this point the search turned into a search for narcotics, "[b]ased on the discovery of the Chore Boy." *Id.* at 18. Finding a scrubbing pad inside an eyeglasses case, without more, does not create probable cause to unlock a glove box and rummage through containers found inside that glove box. **Commonwealth v. Runyan**, 160 A.3d 831, 837 (Pa. Super. 2017) *quoting* **Commonwealth v. Lechner**, 685 A.2d 1014, 1016 (Pa. 1996) (warrantless search requires more than mere suspicion or good faith belief on part of police officer).

Under the circumstances here, a reasonably prudent man would not have believed his safety was compromised. This was a warrantless search of the car for contraband, not a protective weapons search. Thus, the search of the locked glove compartment exceeded the permissible scope of **Long.**

Order affirmed.


RANSOM, J., joins the memorandum.

STEVENS, P.J.E., files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

- 10 -

Date: <u>11/22/2017</u>