**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DERRELL OREA COLLYMORE | : | |
| | : | |
| Appellant | : | No. 1627 MDA 2017 |

Appeal from the Judgment of Sentence September 1, 2017
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0001048-2017

BEFORE:  PANELLA, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, J.            **FILED: JANUARY 11, 2019**

Appellant, Derrell Orea Collymore, appeals from the aggregate judgment of sentence of ten to twenty years of confinement, which the court imposed after his jury trial convictions for the manufacture, delivery or possession with intent to manufacture or to deliver a controlled substance ("PWID") and possession of marijuana.[1] We affirm.

On February 3, 2017, during a traffic stop, Appellant was found in possession of sixteen grams of cocaine and a small amount of marijuana.[2] On

_____

[1] 35 P.S. § 780-113(a)(30) and (31), respectively.

[2] In its opinions, the trial court set forth the relevant facts and procedural history of this case. **See** Trial Court Opinion, filed Sept. 20, 2017, at 1-2; Trial Court Opinion, filed Dec. 1, 2017, at 1-2.

April 18, 2017, Appellant filed a pretrial motion alleging that the search of his vehicle was illegal.[3]

During the suppression hearing,[4] Officer Todd Grager of the Lancaster City Bureau of Police testified that, prior to the incident at issue, Detective Adam Weber had told him that Appellant had an outstanding bench warrant and "could be arrested on the bench warrant." N.T. Trial at 5, 12-13.[5] The officer gave no reason for conducting the traffic stop, such as a traffic violation, other than arresting Appellant on the outstanding warrant. *See id*., at 22. Officer Grager's testimony continued:

> [A]    [B]efore the vehicle actually even came to a stop, I called out to Lancaster Countywide Communications to run a warrant check on Derrell Collymore, because I knew after seeing him as the driver when I pulled up beside, I asked Countywide Communications to go ahead and run that information and confirm that warrant.
>
> Q    So Detective Weber had already told you that there was an active bench warrant, but you were just confirming that through Lancaster Countywide Communications, correct?

---

[3] As explained in greater detail below, the automobile that Appellant was driving at the time of the incident was not registered in his name, and he stated that he borrowed it from a friend. However, in order to avoid verbosity, we will refer to it as "his" vehicle herein.

[4] "In reviewing the denial of a suppression motion, . . . [o]ur scope of review is limited to the evidence presented at the suppression hearing." *Commonwealth v. Thran*, 185 A.3d 1041, 1043 (Pa. Super. 2018) (citations omitted).

[5] The notes of testimony from the suppression hearing on June 14, 2017, and the notes of testimony from the trial on June 14 and 15, 2017, were combined into one consecutively numbered transcript. For simplicity, we will cite to this transcript herein as "N.T. Trial."

A      Yes.

Q      Okay. And at that point, had you received a response from Countywide?

A      No.   At this point in time -- sometimes it can be lengthy depending on what's going on in the city and there's other incidents that are happening. You know, it can sometimes be five minutes before you get a response.

*Id*., at 18.

Officer Grager stated that, when he activated his overhead lights and sirens, "it appeared from [his] training and experience, that [Appellant] was not going to stop initially[,]" but Appellant "did eventually stop." *Id*., at 14.

Officer Grager further testified that, while waiting for confirmation of Appellant's active warrant and for other officers to arrive, he "observed [Appellant] moving in the passenger compartment and actually leaning over in towards the center console of the vehicle. . . . [He] saw [Appellant] reaching. [He did not] know exactly what [Appellant] was reaching for at that time." *Id*., at 15-16. Officer Grager "was concerned about [his own] safety, because . . . [,] on numerous different occasions with vehicle stops, [he has] had people that have moved weapons or other contraband as a result of being stopped by the police." *Id*., at 16.

Officer Grager testified that, after other officers had arrived but before he confirmed the existence of the warrant, he approached Appellant's vehicle and "asked [Appellant] to place his hands on top of his head and exit the vehicle." *Id*., at 17. Officer Grager further told the trial court:

While I was waiting for the response, after I pulled [Appellant] out of the driver's side of the vehicle, I patted him down for weapons

to ensure that he didn't have any weapons on his person. And once I conducted that pat down, I had him sit on the curb to the rear of his vehicle with another officer.

*Id*., at 19. When asked if, once he placed Appellant on the curb, "was [Appellant] free to go back inside his vehicle[,]" the officer answered: "He was detained at that point. He had not been yet placed in handcuffs and arrested. He was detained until confirmation of the Lancaster County bench warrant." *Id*., at 25.

Officer Grager stated that he then conducted "a cursory search of the area in [Appellant's] wingspan" that "could potentially hold a weapon" "within the vehicle to make sure that [Appellant] didn't have any weapons that he would be using against" the officers and discovered drugs. *Id*., at 19-20, 25.

Officer Grager asserted that, after he completed the search, he received confirmation from Countywide Communications "that [Appellant] did, in fact, have a valid Lancaster County bench warrant." *Id*., at 20. Officer Grager ended by explaining that he arrested Appellant only after he received this confirmation of the warrant. *See id*.

At the conclusion of the hearing, the court denied the suppression motion and proceeded directly to trial.

During trial, Appellant testified that, at the time of the incident, his vehicle was not working properly, could not be moved, and was "stuck outside [his] house." *Id*., at 225. He explained that he walked from his apartment on Queen Street in Lancaster City to a friend's home on Chestnut Street in

Lancaster City to borrow her automobile, which he was driving when Officer Grager stopped him. **See id**., at 225, 235. During cross-examination, the following exchange occurred:

> Q    So when you were arrested, do you remember at the police station and then later when bail was being set on your case being asked questions, personal questions, your date of birth, your address, things like that?
>
> A    Yes, ma'am.
>
> Q    Do you remember that? Okay. And what address did you give them?
>
> A    I gave them, on my license, 241 Columbia Avenue.
>
> Q    Okay. In Columbia, Pennsylvania, correct?
>
> A    Yes, ma'am.
>
> Q    Okay. So how did you get from Columbia into Lancaster City to utilize your friend's car that day?
>
> A    That was my mailing address in Columbia. It's on my license. That's the address on my license plate -- on my driver's license.
>
> Q    When you're at the police station and, again, when they're setting bail, the purpose of bail is to make sure that you're gonna show up for future court appearances. So when the judge is asking --
>
> [DEFENSE COUNSEL]:  Your Honor, that's a little bit outside the scope.
>
> THE COURT:    Overruled.

**Id**., at 233-34. When the Commonwealth again asked Appellant what address he gave to the judge who set bail, defense counsel objected, arguing that the question had been asked and answered, and the trial court sustained the objection. **See id**., at 234.

- 5 -

On June 15, 2017, a jury convicted Appellant of the aforementioned crimes. Prior to sentencing, the trial court ordered a pre-sentence investigation ("PSI") report.

At Appellant's sentencing hearing on September 1, 2017, the trial court reviewed the sentencing guidelines, including finding and correcting an error on the guidelines worksheet given to it by the Commonwealth, which adjusted the worksheet in Appellant's favor. The trial court also permitted Appellant and his counsel additional time to review the sentencing guidelines worksheet, in order to confirm that all information was now accurate. The trial court further reviewed and explained the offense gravity score and prior record score to Appellant, including where certain information was located on the worksheet.

Immediately prior to announcing the sentence, the trial court stated that it considered: "all information that was contained in the [PSI] report"; Appellant's "family history," "mental health history," "treatment" history, "age[,]" "character[,]" "work history[,]" "probation and parole violations[,]" "level of education" -- including that he "can read, write and understand the English language" – and "rehabilitative needs, including the fact that there is nothing to indicate that [he] ha[d] made any attempt to change [his] lifestyle or that [he] is amenable to rehabilitation"; "the penalties authorized by the Pennsylvania Legislature"; "the crimes committed"; "the guidelines . . . established by the Pennsylvania Commission on Sentencing"; "the Sentencing

Code"; "the nature and circumstances of the offense"; "the gravity of the offense as it relates to the impact on th[e] community"; "protection of the public"; and Appellant's "extensive prior criminal record, which starts in 1995" and "is not adequately reflected in the sentencing guideline worksheet," which allows for a "maximum" score of "five" "for purposes of calculating the guidelines[,]" when Appellant had "a prior record score of ten." N.T., Sentencing, 9/1/17, at 18-21, 23-24. The trial court also listed what it considered to be aggravating circumstances:

> [T]he guidelines do not take into consideration those additional five points in [Appellant's] prior record score, and as far as this [c]ourt is concerned, the sentencing guidelines are far too lenient for the circumstances of this case.
>
> The [c]ourt also considers as an aggravating circumstance the number of prior felony drug offenses. This is now [Appellant's] fifth conviction.
>
> The [c]ourt considers as an aggravating circumstance [Appellant's] repeated probation or parole violations since 1996, including six violations in the past nine years.
>
> The [c]ourt considers as an aggravating circumstance the lack of any steady employment, other than apparently selling drugs.
>
> The [c]ourt considers [Appellant] ha[s] basically been a career criminal, having been to court on new crimes or violations 19 times over the past 22 years.

*Id*., at 24. The trial court concluded its remarks:

> With your four prior felony drug convictions and with this new conviction, really, Mr. Collymore, you have made a mockery of the courts, of the criminal justice system and of the rule of law.
>
> All of these facts clearly demonstrate you are not capable of rehabilitation. They justify a sentence above the aggravated range of the sentencing guidelines. The intent of this sentence is to

prevent you from returning to the illegal sale of drugs for the longest period of time possible.

*Id*., at 25. For these reasons, the trial court sentenced Appellant to the statutory maximum sentence.

Following sentencing, Appellant filed a post-sentence motion challenging the discretionary aspects of his sentence, which the trial court later denied. This timely appeal followed.[6]

Appellant presents the following issues for our review:

I.    Did the trial court err in denying [Appellant]'s Motion to Suppress the cocaine and marijuana seized from his vehicle, where police did not have reasonable suspicion to justify an alleged protective sweep of the area of [Appellant]'s former wingspan within the vehicle, this sweep was not protective in that [Appellant] had no access to his vehicle, nor did they actually conduct a protective sweep of his former wingspan as claimed?

II.   Did the trial court err in overruling defense counsel's objection to the prosecutor's cross-examination of [Appellant] regarding the address he gave to the authorities when bail was

---

[6] Appellant filed his statement of errors complained of on appeal on November 13, 2017. The trial court entered its opinion pursuant to Pa.R.A.P. 1925(a) on December 1, 2017.

The Commonwealth has elected not to file a brief with this Court. *See* Letter from Jared L. Hinsey, Assistant District Attorney, to Jennifer Traxler, Deputy Prothonotary (Apr. 26, 2018).

"An appellee is required to file a brief that at minimum must contain 'a summary of argument and the complete argument for appellee.'" *Commonwealth v. Pappas*, 845 A.2d 829, 835 (Pa. Super. 2004) (quoting Pa.R.A.P. 2112). In *Pappas*, the panel referred to the Commonwealth's failure to file a proper appellee's brief as "unacceptable." *Id*. We echo that opinion. And we remind Attorney Hinsey of his obligation to file an appellee's brief on the Commonwealth's behalf in future appeals.

set, as these questions were beyond the scope of direct examination, irrelevant, and prejudicial?

III. Was the trial court's imposition of the statutory maximum sentence for possession with intent to deliver cocaine manifestly excessive and an abuse of the court's discretion under the circumstances, and did the aggravated circumstances cited by the court fail to justify the court's sentence, which was significantly above the top of the aggravated range of the sentencing guidelines?

Appellant's Brief, at 6 (trial court's answers omitted).

First, Appellant contends that the trial court erred by denying his motion to suppress the cocaine and marijuana found during Officer Grager's search of his vehicle. Appellant's challenge can be divided into two parts: (1) whether Officer Grager's suspicion that a weapon may be present in Appellant's vehicle was reasonable; and (2) whether the search was necessary for the officer's protection.[7]

> The standard of review for an order denying a suppression motion is as follows:
>
>> In reviewing the denial of a suppression motion, our role is to determine:
>>
>>> whether the suppression court's factual findings are supported by the record and whether the legal

---

[7] In his statement of questions involved pursuant to Pa.R.A.P. 2116 and in the first header in his argument section of his brief pursuant to Pa.R.A.P. 2119(a), Appellant asserts that police did not "actually conduct a protective sweep of his former wingspan as claimed." Appellant's Brief, at 6, 21. However, nowhere else in his brief, including in any part of his argument section besides the first header, does Appellant aver that police searched inside his vehicle beyond his wingspan. *See id*., at 21-29. As Appellant does not develop any argument, we find this claim waived, and will not consider it. *See, e.g.*, *Commonwealth v. Spotz*, 18 A.3d 244, 281 n.21 (Pa. 2011) (finding "one sentence does not constitute a developed, reasoned, supported, or even intelligible argument"; "matter is waived for lack of development").

- 9 -

conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal quotations and citations omitted). Our scope of review is limited to the evidence presented at the suppression hearing. *In re L.J.*, 622 Pa. 126, 79 A.3d 1073, 1080 (2013).

*Commonwealth v. Mackey*, 177 A.3d 221, 226 (Pa. Super. 2017).

*Commonwealth v. Thran*, 185 A.3d 1041, 1043 (Pa. Super. 2018).

Initially, we address Appellant's assertion that Officer Grager "did not have a reasonable suspicion" that a weapon was inside the vehicle. Appellant's Brief, at 24. Appellant contends that, without such a suspicion, Officer Granger's warrantless vehicle search was improper, and the trial court should have granted his suppression motion.

In *Commonwealth v. Simmons*, 17 A.3d 399 (Pa. Super. 2011), this Court held:

[An officer]'s observation of furtive movements, within the scope of a lawful stop, led him to reasonably be concerned for his safety

- 10 -

and therefore justified the ***Terry***[8] protective frisk. Indeed, on multiple occasions we have held that similar furtive movements, when witnessed within the scope of a lawful traffic stop, provided a reasonable basis for a protective frisk. ***See e.g. Commonwealth v. Morris***, 537 Pa. 417, 644 A.2d 721, 723 (1994); ***In re O.J.***, 958 A.2d [561,] 566[ (Pa. Super. 2008) (*en banc*)]; ***Commonwealth v. Mack***, 953 A.2d 587, 591 (Pa. Super.2008); ***Commonwealth v. Parker***, 957 A.2d 311, 316 (Pa. Super.2008); ***Commonwealth v. Wilson***, 927 A.2d 279, 284–285 (Pa. Super.2007).

***Id***., at 404. ***See also In re O.J.***, 958 A.2d 561, 566 (Pa. Super. 2008) (*en banc*) (finding defendant's "rapid and furtive hand movements over the console indicated that he may have been hiding a weapon in that location"; "the police officer was permitted to engage in a search of that compartment for his own protection"; "constitutional safeguards do not require an officer to gamble with his life"). Nevertheless, this Court clarified:

[P]re-stop furtive movements, by themselves, may not be used to justify an investigative detention and search commenced after the conclusion of a valid traffic stop where the totality of circumstances has established that the furtive movements did not raise immediate concern for the safety of the officer who undertook the initial vehicle detention.

---

[8] A "***Terry*** stop" is "[a]n investigative detention [that] occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes." ***Commonwealth v. Barber***, 889 A.2d 587, 592 (Pa. Super. 2005) (citation omitted). "Such a detention constitutes a seizure of a person and thus activates the protections of the Fourth Amendment and the requirements of ***Terry v. Ohio***, 392 U.S. 1 (1968)." ***Id***., at 592. It must be supported by "reasonable suspicion that the person seized is then engaged in unlawful activity." ***Id***., at 593 (citation omitted).

*Simmons*, 17 A.3d at 405. *See also Commonwealth v. Moyer*, 954 A.2d 659, 670 (Pa. Super. 2008) (*en banc*) (finding "[f]urtive movements and nervousness, standing alone, do not support the existence of reasonable suspicion").

In other words, while furtive movements by a suspect are required, additional factors are also needed to give rise to reasonable suspicion in order to perform a protective weapons search. *See Commonwealth v. Buchert*, 68 A.3d 911, 916-917 (Pa. Super. 2013); *Simmons*, 17 A.3d at 404-405; *Moyer*, 954 A.2d at 670.

Here, Officer Grager testified that he knew there was an active warrant for Appellant's arrest, that Appellant did not initially stop his vehicle, and that Appellant made furtive movements over the center of the vehicle's console. *See* N.T. Trial at 12-16. This combination of factors provided a reasonable basis for Officer Grager to suspect that a weapon may be present inside the vehicle. *See*, *e.g.*, *O.J.*, 958 A.2d at 566.

We now turn to Appellant's allegation that the search of the vehicle was not "protective," because he was in police control, had no access to the vehicle at the time the search occurred, was going to be arrested, and thus would not be returning to his automobile after the search. Appellant's Brief at 21, 23. He maintains that Officer Grager consequently was not authorized to perform a protective weapons search of his car.

In **Commonwealth v. Morris**, 644 A.2d 721, 723 (Pa. 1994), the Supreme Court of Pennsylvania adopted the standard for assessing the constitutionality of a protective search of the interior of a car for weapons set forth by the United States Supreme Court in **Michigan v. Long**, 463 U.S. 1032 (1983):

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and *the suspect may gain immediate control of weapons*. The issue is whether a reasonably prudent man would be warranted in the belief that his safety or that of others was in danger.

*Id*., at 1049-1050 (emphasis added) (internal brackets, citations, and quotation marks omitted).

In **Long**, during a vehicle stop, the defendant, David Long, exited his automobile of his own accord, then attempted to reenter it, apparently to obtain its registration. Police officers "observed that there was a large knife in the interior of the car[.]" *Id*., at 1050. The officers then stopped Long and conducted a protective search of the passenger compartment of Long's vehicle, which yielded marijuana. "The Michigan Supreme Court appeared to believe that it was not reasonable for the officers to fear that Long could injure them, because he was effectively under their control during the investigative stop and could not get access to any weapons that might have been located

in the automobile." *Id*., at 1051. The United States Supreme Court found this analysis "mistaken in several respects." *Id*.

> During any investigative detention, the suspect is "in the control" of the officers in the sense that he "may be briefly detained against his will ...." *Terry*, [392 U.S. at 34 (White, J., concurring)]. Just as a *Terry* suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a *Terry* suspect in Long's position *break away from police control and retrieve a weapon from his automobile*.

*Id.* (emphasis added). The Court held that "[t]he circumstances of [Long's] case clearly justified [the police officers] in their reasonable belief that Long posed a danger if he were permitted to reenter his vehicle." *Id*., at 1050.

This Court revisited the issue of protective vehicle searches in *Commonwealth v. Rosa*, 734 A.2d 412 (Pa. Super. 1999).[9] There, the

---

[9] Albeit that *Rosa* is almost two decades old, we find no more recent case law overruling or otherwise contradicting it.

When this Court has considered the issue of protective vehicle searches more recently, we relied upon the fact that, in those cases, the defendants were not going to be arrested, were going to return to their vehicles unless contraband was found during the search, and, thus, could have had access to a weapon to use against an officer when they returned to their automobiles.

*See*, *e.g.*, *Buchert*, 68 A.3d at 911-13, 916-917 (appeal by the Commonwealth from an order suppressing evidence seized during a lawful traffic stop for a broken tail light; appellee made furtive movements; officer instructed occupants to exit the vehicle; relying upon *Long*, held that a suspect who is not placed under arrest will be free to leave and to reenter his automobile and will then have access to any weapons inside; reversed); *Commonwealth v. Boyd*, 17 A.3d 1274, 1275, 1277, 1279 (Pa. Super. 2011) (appeal by the Commonwealth from an order granting a suppression motion; "officers pulled over the vehicle for impeding traffic[,]" "asked Appellee and

- 14 -

J-A15011-18

defendants were stopped late at night for a violation of the Motor Vehicle Code. After a police officer observed knives and arrows inside the vehicle, he directed the driver and his two passengers to step out of the car and performed a search of the vehicle. *See id*., at 413. The defendants "were under the control of backup officers at the rear of the vehicle at the time of the search[.]" *Id*., at 416. The trial court had concluded that no protective search was warranted, because "the officers in this case should not reasonably have been in fear of [the defendants]." *Id*.

This Court disagreed, relying upon the language from *Long* that "a *Terry* suspect in Long's position [might] break away from police control and retrieve a weapon from his automobile." *Id*., at 416 (quoting *Long*, 463 U.S.

_____

his passenger to exit the vehicle[,]" and "told Appellee to stand behind the car"; Appellee was not handcuffed at the time the officer searched the center console for weapons and was not taken into custody until after crack cocaine was found; "there is no indication that Appellee would be arrested for the traffic violation, and thus, he would be able to return to his vehicle and access any possible weapons secreted in the console"; reversed); *O.J.*, 958 A.2d at 563, 566 (Commonwealth appealed from an order suppressing drugs seized from a motor vehicle pursuant to a protective search for weapons conducted after a lawful traffic stop for speeding; at the time police conducted the search, the driver and passenger had been removed from the vehicle and placed in patrol car; officer "was not planning to arrest Appellee and his passenger for the traffic violations and . . . would have permitted them to return to their car"; thus, the officer "was justified in making sure that there were no weapons in the console that could be utilized against him" when occupants returned to their vehicle; reversed).

However, none of these cases stated that an expectation that the occupants would return to the vehicle was necessary in order to justify a protective search of the vehicle for weapons.

- 15 -

at 1051). As this Court summarized: "The entire thrust of the *Long* analysis, and its enduring legacy, is the authorization of a protective *Terry* search of a vehicle *before*, **or regardless of whether**, the occupants are arrested." *Id*. at 419 (bolded emphasis added; italicized emphasis in original). This Court held that "[t]here can be little question that the protective search at issue in this case was authorized under the *Long* analysis." *Id*., at 416.

Thus, contrary to Appellant's contention, *see* Appellant's Brief at 21, 24, the fact that he had no access to the vehicle at the time the search occurred, *see* N.T. Trial at 17, 19, 25, and that Officer Grager believed that Appellant would not be returning to his automobile after the search due to Appellant's outstanding bench warrant, *see id*., at 12-13, 22, are non-dispositive of whether Officer Grager's protective search of Appellant's car was legal. *See Rosa*, 734 A.2d at 416. Despite these facts, Appellant, who was not handcuffed nor locked inside a patrol car, *see* N.T. Trial at 19, 25, still could have broken away from police control and retrieved a weapon from his vehicle. *See Rosa*, 734 A.2d at 416.

Accordingly, due to Appellant's outstanding warrant, delay in pulling over, and furtive movements before exiting his car, *see* N.T. Trial at 12-16, Officer Grager was reasonably concerned about his safety, *see id*., at 16, and the cursory search for weapons in the area inside the vehicle formerly within Appellant's wingspan, *see id*., at 19, was reasonably prudent for his safety and the safety of any other officers at the scene in the event that Appellant

broke away from police control and retrieved a weapon from the automobile. *See Long*, 463 U.S. at 1049-50; *Morris*, 644 A.2d at 723; *Rosa*, 734 A.2d at 416. *See also Buchert*, 68 A.3d at 916-917; *Simmons*, 17 A.3d at 404-405; *O.J.*, 958 A.2d at 566; *Moyer*, 954 A.2d at 670. Consequently, the trial court's factual findings were supported by the record, and its legal conclusions drawn from those facts were correct. We thus conclude that Appellant's first issue, in its entirety, merits no relief.

Next, Appellant argues that the trial court erred in overruling his objection to the Commonwealth's cross-examination of Appellant about his address. In particular, Appellant contends that, in cross-examining him, the Commonwealth exceeded the scope of direct examination and that the questions were "irrelevant" and "prejudicial." Appellant's Brief at 30.

"The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." *Commonwealth v. Manivannan*, 186 A.3d 472, 479 (Pa. Super. 2018) (citation omitted).

> Preliminarily, we note that cross-examination is the primary method for testing the believability of a witness and the truth of his testimony. Pennsylvania Rule of Evidence 611(b) addresses the scope of cross-examination, providing that "[c]ross-examination of a witness other than a party in a civil case should be limited to the subject matter of the direct examination and matters affecting credibility; however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Pa.R.E. 611(b). Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish a witness's motive for testifying. The scope of cross-

examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion.

***Commonwealth v. Radecki***, 180 A.3d 441, 465 (Pa. Super. 2018) (some internal citations and quotation marks omitted).

The trial court opinion dated December 1, 2017, comprehensively discusses and properly disposes of this issue:

> While Appellant claims the questions were irrelevant and went beyond the scope of direct examination, this assertion is directly contradicted by the record. Appellant testified that on the day of this incident his vehicle could not be moved so he traveled from his residence to that of his friend to borrow her [automobile]. In an effort to refute that testimony and call into question his credibility, the Commonwealth attempted to show that Appellant's residence was not in close proximity to that of his friend and he likely did not walk to her residence that day to pick up the car. Furthermore, while Appellant claims the questions were prejudicial, the only prejudice offered by Appellant at trial was that it was "a little bit outside the scope."

Trial Court Opinion, filed Dec. 1, 2017, at 11.

Consequently, the challenged cross-examination questions were permissibly employed to test Appellant's story and to impeach his credibility. ***See Radecki***, 180 A.3d at 465. We thus find no abuse of discretion, ***see Manivannan***, 186 A.3d at 479, and Appellant's second issue likewise merits no relief.

Finally, Appellant challenges the discretionary aspects of his sentence for PWID, maintaining that it was "manifestly excessive and an abuse of the court's discretion under the circumstances." Appellant's Brief, at 38.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Prior to reaching the merits of a discretionary sentencing issue[, w]e conduct a four-

part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Manivannan*, 186 A.3d at 489 (quotation marks and some citations omitted).

Here, Appellant filed a timely notice of appeal, properly preserved this issue in his post-sentence motion, and included a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence in a separate section of his brief to this Court pursuant to Pa.R.A.P. 2119(f). We therefore turn to the final requirement: whether the question raised by Appellant is a substantial question meriting our discretionary review.

In his Pa.R.A.P. 2119(f) statement, Appellant insists that "his sentence is inappropriate under the Sentencing Code[,]" because "the trial court's statutory maximum sentence of ten to twenty years [of] incarceration was unreasonable[] and so manifestly excessive as to constitute an abuse of discretion." Appellant continues that the trial court "imposed a sentence above the aggravated range without stating sufficient reasons or appropriate reasons for doing so."

"[A] claim the trial court failed to state its reasons for deviating from the guidelines presents a substantial question for review." *Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009). Accordingly, we find

- 19 -

that Appellant has raised a substantial question. By raising a substantial question, along with fulfilling the other requirements of our four-part analysis, Appellant consequently has merited our discretionary review. **See Manivannan**, 186 A.3d at 489.

Our standard of review for a challenge to the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Conte**, ___ A.3d ___, ___, 2018 WL 5666923, *5 (Pa. Super., filed Nov. 1, 2018) (citation omitted).

"A sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender." **Commonwealth v. Schutzues**, 54 A.3d 86, 99 (Pa. Super. 2012).

In addition:

> Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A presentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or

systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.

Accordingly, where the sentencing judge had the benefit of a pre-sentence report, it will be presumed that he was aware of relevant information regarding appellant's character and weighed those considerations along with the mitigating statutory factors.

*Conte*, ____ A.3d at ____, 2018 WL 5666923 at *5 (internal brackets, citations, and quotation marks omitted) (some formatting).

Here, Appellant contends that the trial court abused its discretion by not providing sufficient reasons on the record for his sentence, only considering the crime, and placing disproportionate emphasis on certain aspects of Appellant's criminal history while ignoring its chronology, including that Appellant has not received a state sentence since 1997; thus, Appellant argues that the trial court failed to individualize his sentence. *See* Appellant's Brief at 38, 41-45.

Appellant's argument is defied by the record. During Appellant's sentencing hearing, the trial court clearly provided its reasons for imposing his sentence on the record. *See* N.T. Sentencing at 18-21, 23-24. Although the trial court did consider "the crimes committed" and "the nature and circumstances of the offense[,]" *id*., at 19-20, it also considered a plethora of information about Appellant, including his family history, mental health history, failed treatment history, age, character, work history, probation and parole violations, level of education, English-language literacy, rehabilitative needs, and extensive prior criminal record, which was not adequately reflected

in the sentencing guidelines. *See id*., at 18-21, 23-24. *See also id*., at 2-6 (trial court's detailed review of the sentencing guidelines, including correcting and confirming Appellant's criminal history). The trial court also noted that, with this conviction, Appellant now has five separate convictions just for felony drug offenses. *See id*., at 24-25.

Additionally, the trial court stated at sentencing that it considered all of the content in the PSI, *see id*., at 18, and thus we presume that the trial court "was aware of relevant information regarding the defendant's character and weighed those considerations[.]" *Conte*, ___ A.3d at ___, 2018 WL 5666923 at *5. Appellant's sentence hence was individualized, and his final issue merits no relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/11/2019