**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Kristoffer TUGGLES, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 30, 2012.
Filed Dec. 20, 2012.

Anthony Pomeranz, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Nicholas L. Palazzo, Philadelphia, for appellee.

BEFORE: STEVENS, P.J., BOWES, and PLATT,* JJ.

OPINION BY BOWES, J.:

The Commonwealth appeals from the January 17, 2012 order suppressing drugs and money located in the console of a car being driven by Appellee Kristoffer Tuggles as well as money discovered on Appellee's person. After careful review, we hereby reverse and remand.

The suppression court rendered the following factual findings in connection with its decision to suppress, and we adopt them for purposes of our analysis on appeal:

On February 3, 2011, at approximately eight o'clock p.m., while on routine patrol, Officer David Marcellino and his partner, Officer Rosado, were in the seventeen-hundred block of S. 19th Street. At that time, [Officer] Marcellino observed a 2011 Chevrolet Impala, operated by the defendant, disregard a stop sign on 19th Street. He signaled for the Impala to pull over and the defendant complied.

Officers Marcellino and Rosado approached the vehicle, which was occupied by the defendant and a front-seat passenger. As the officers were approaching, [Officer] Marcellino saw the defendant make an arm motion that he described, both with his verbal testimony and by simulating the motion during that testimony, as one of an arm going from an upright position to a horizontal one, consistent with closing a hinged center panel. Officer Marcellino approached the driver's side of the vehicle and Officer Rosado approached the passenger side. The passenger, who appeared to [Officer] Marcellino to be intoxicated, did not remove his hands from his pockets when requested by [Officer] Rosado. The defendant obeyed [Officer] Marcellino's commands and was very cooperative. Both individuals were given a pat-down which revealed no weapons and were placed in the back of the police vehicle.

At that time, Officer Marcellino again approached the now-vacant Impala and opened the center console panel, where

* Retired Senior Judge assigned to the Superior Court.

he found fourteen packets of what appeared to be crack cocaine, as well as two thousand, two hundred and twenty dollars ($2,220) in United States currency. Subsequent to that discovery, the defendant was formally placed under arrest and searched more thoroughly, at which point he was found to be carrying on his person one thousand seven hundred and four dollars ($1,704) in United States currency. Officer Marcellino issued a traffic citation to the defendant. The passenger was released and left the scene on foot; [Officer] Marcellino testified that he may have lived nearby.

Officer testified that the area in which the traffic stop occurred was one with high crime, drugs and guns. After being asked whether he had any reason to believe that his safety was jeopardized, he cited the arm motion over the center console and the front passenger's initial refusal to remove his hands from his pockets.

Trial Court Opinion, 3/14/12, at 1–2 (citations to record and quotation marks omitted).

Based on these facts, the suppression court concluded that Officer Marcellino was permitted to pat down Appellee and his passenger for weapons but was not justified in conducting a weapons search of the center console of Appellee's car. The court ultimately suppressed the drugs and money located therein, as well as the money found on Appellee's person. In this ensuing appeal, the Commonwealth raises this position:

Where the lower court held that police had reasonable suspicion to frisk defendant for weapons after they initiated a nighttime car stop of two unknown men in a high-crime area and defendant closed the car's center console as they approached and his passenger refused to take his hands from his pockets, did the court err in finding that it was unconstitutional for the officers to frisk the console?

Commonwealth's brief at 2.

We review the propriety of a court's decision to suppress evidence pursuant to the following precepts:

When reviewing an Order granting a motion to suppress we are required to determine whether the record supports the suppression court's factual findings and whether the legal conclusions drawn by the suppression court from those findings are accurate. In conducting our review, we may only examine the evidence introduced by appellee along with any evidence introduced by the Commonwealth which remains uncontradicted. Our scope of review over the suppression court's factual findings is limited in that if these findings are supported by the record we are bound by them. Our scope of review over the suppression court's legal conclusions, however, is plenary.

*Commonwealth v. Gutierrez*, 36 A.3d 1104, 1107 (Pa.Super.2012) (quoting *Commonwealth v. Henry*, 943 A.2d 967, 969 (Pa.Super.2008)).

In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), and *Commonwealth v. Morris*, 537 Pa. 417, 644 A.2d 721 (1994), the respective Supreme Courts promulgated the test for determining whether a police officer may conduct a protective search of the interior compartment of a car for weapons. In *Long*, the United States Supreme Court applied the test announced in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and held that a weapons search may be performed where an officer has reasonable suspicion that a firearm may be secreted in the car and that the search may encompass any area where a weapon could be hidden and accessible to the de-

fendant in the vehicle. In *Long,* the High Court made the apt observation that "detentions involving suspects in vehicles are especially fraught with danger to police officers." *Long, supra* at 1047, 103 S.Ct. 3469. The *Long* Court's specific holding is that

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. "The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

*Long, supra* at 1049–50, 103 S.Ct. 3469 (partially quoting *Terry, supra* at 21, 88 S.Ct. 1868).

█ In *Morris, supra,* our Supreme Court concluded that the *Long* standard comported with the Pennsylvania Constitution. In that case, the Supreme Court ruled that a protective search of the interior of the car was warranted based on the following narrative. After being stopped for a traffic infraction, the defendant leaned down toward the floor near the center console, he briefly placed his hand between his legs after being ordered to put them on the steering wheel. In the course of the stop, the police observed a metal pipe in the car. In upholding the existence of reasonable suspicion to conduct a protective weapons sweep of the vehicle, our Supreme Court ruled that the police officer had sufficient facts at his disposal to warrant a reasonably prudent man to believe that his safety "was compromised" sufficiently to allow the police intrusion in

question. *Morris, supra* at 723. The Court stated that the defendant's behavior of leaning down and reaching between his legs was consistent with hiding a weapon. *See also Commonwealth v. Grahame,* 607 Pa. 389, 7 A.3d 810, 816 (2010) (a protective search is justified under *Terry* when "the officer can articulate facts that establish an individualized, objective basis for perceiving a threat of armed violence"). We look at the totality of the circumstances facing an officer when we examine whether that officer came to a reasonable suspicion to search for a weapon. *Commonwealth v. Simmons,* 17 A.3d 399, 403 (Pa.Super.2011).

In the present case, the suppression court determined that Officer Marcellino did not possess reasonable suspicion to believe that Appellee may have secreted a weapon in the car's console based on the fact that Officer Marcellino saw only a single hand movement rather than plural furtive movements over the console. Trial Court Opinion, 3/14/12, at 6–7. The suppression court, rather than analyzing the facts at Officer Marcellino's disposal, was attempting to distinguish our *en banc* decision in *In re: O.J.,* 958 A.2d 561 (Pa.Super.2008), which is, in fact, highly analogous to the present one. Therein, police observed the defendant commit traffic infractions, and the defendant initially failed to heed the officers' attempt to stop his vehicle. During the nighttime interdiction, police saw the defendant make several hand movements over the center console. We upheld the protective weapons search of the console based on the officer's explanation that he conducted that exploration because the defendant's actions with his hand were indicative that he may have secreted a weapon therein. We held that police had reasonable suspicion that a weapon was located in the console due to the evasive driving and furtive hand movements.

■ However, nothing in our case law requires the existence of multiple hand movements to support an officer's fear that a defendant may have access to a firearm. For example, in *Commonwealth v. Foglia*, 979 A.2d 357 (Pa.Super.2009) (*en banc*), the defendant performed a single action of patting his waistband, which is an area where weapons are frequently secreted. We concluded that police were justified in performing a search of that area for weapons when it was night in a high crime area, the defendant walked away upon viewing police, and police had received an anonymous tip that someone matching the defendant's description was armed. The pertinent analysis does not involve the number of actions performed by a person, but rather the nature of those actions. Where a person performs an activity that is indicative of an attempt to secrete a weapon, that movement, regardless of whether it is singular or multiple, can support a belief that the person has a gun.

■ The suppression court also focused on the fact that Appellee was compliant with police directives. Trial Court Opinion, 3/14/12, at 7, 10. However, cooperation with police does not erase an otherwise valid belief that a defendant may have access to a gun. There are many decisions where the factual recitation indicates that a defendant followed police orders but a weapons search was ultimately upheld. *E.g., Commonwealth v. Boyd*, 17 A.3d 1274, 1275 (Pa.Super.2011). Finally, the suppression court placed significance on the fact that Appellee and his passenger were secure and not located in the car when it was searched. However, as the suppression court expressly acknowledged, Appellee was going to "be allowed to return to the car at the close of the investigative detention[.]" Trial Court Opinion, 3/14/12, at 10. Hence, police were permitted to ensure that Appellee would not be able to gain access to a weapon in his vehicle upon his return. *In re O.J., supra.*

Finally, for reasons that are not apparent, the suppression court analyzed several cases involving automobile searches incident to an arrest. Trial Court Opinion, 3/14/12, at 8–9. Those cases have no application herein because this search was not conducted incident to arrest but was a protective weapons search that must be examined under the standards set forth in *Long* and *Morris*. Officer Marcellino did not search the car; he opened the console, where Appellee's hand movement had occurred, to see if it contained something that could harm that officer. Appellee also was not under arrest and would have been permitted to return to the car, where he could have caused harm to police if a gun or other weapon was located in the console. Hence, the vehicle searches incident to arrest that were scrutinized by the suppression court in its decision are inapplicable herein.

We conclude that two recent decisions, *Boyd, supra*, and *Simmons, supra*, compel reversal in this case. In *Boyd*, the defendant was stopped at night in a high crime area for a traffic infraction. As police officers "approached the vehicle, one officer saw [the defendant] lean over and reach into the center console." *Boyd, supra* at 1275. Based on safety concerns, the officers ordered the defendant and his passenger from the car and frisked them. Even though no weapons were found on the occupants, one officer opened the center console to see if a weapon was located therein and discovered drugs. Reversing the suppression court, we upheld the validity of the search of the console as based upon a reasonable suspicion that the defendant may have placed a weapon therein. That finding was predicated upon the same facts at issue herein: a single movement over the center console as police ap-

proached the car, it was night, and the area was marked by drug and criminal activity.

Similarly, in *Simmons, supra*, the defendant was stopped by police after they observed that his car did not have operational taillights. It was night in an area known for drug trafficking. Police saw the defendant reaching down to the floor and then across his chest and testified that the action was "consistent with concealing a weapon." *Id.* at 404. We upheld the ensuing protective weapons search of the area where a gun would have been located. Again, the same factors at issue in that case exist herein: night, a body movement consistent with hiding a weapon, and the stop occurred in a location where criminal activity regularly occurred.

In determining whether Officer Marcellino had reasonable suspicion that he was in danger, we are required to look at all the facts and circumstances at his disposal. He was present in a high crime area, it was night, and he saw Appellee appear to place something in the console of his car. Then, the passenger refused to show the officers his hands and had to be removed from the car. Under the totality of the circumstances, Officer Marcellino had a justifiable fear that a weapon might be located in the console. Based upon *Boyd* and *Simmons*, we conclude that the weapons search conducted herein was not constitutionally infirm.

Order reversed. Case remanded. Jurisdiction relinquished.