J. A04006/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF:  D.G., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| APPEAL OF:  D.G. | : | |
| | : | No. 282 WDA 2015 |

Appeal from the Order Dated January 21, 2015,
in the Court of Common Pleas of Allegheny County
Juvenile Division at No. Case No. T-181178,
Docket Number 1587-08, JID No. 72060-B

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., AND SHOGAN, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED JULY 18, 2016**

D.G. appeals from the January 21, 2015 dispositional order resulting from his adjudication as delinquent for carrying a firearm without a license, possession of a firearm by a minor, drivers required to be licensed, and turning movements and required signals.[1]  We affirm.

The trial court provided the following factual history:

> City of Pittsburgh Police Officer Gary Messer was the sole witness in the hearing on the Motion to Suppress Evidence.  Officer Messer testified that he had been employed by the City of Pittsburgh Police Department for six years.  Part of [his] job duties included being assigned to the Plainclothes 99 Car Zone where he and other police officers would patrol "high impact trouble areas" that were the subject of citizen and mayor complaints.  Officer Messer stated that the most concerning complaints to the unit were those complaints that consisted of "open air narcotics violations and shots fired complaints[.]"

---

[1] 18 Pa.C.S.A. §§ 6106 and 6110.1 and 75 Pa.C.S.A. §§ 7501 and 3334, respectively.

Officer Messer stated that on November 10, 2014, he and his two partners were patrolling the Brighton Road, North Charles area of the City of Pittsburgh where several "shots fired" incidents had been recently reported. According to Officer Messer, he and his fellow officers were patrolling the area in order to show a police presence and to "curb" further violence and similar criminal activity. While patrolling on Brighton Road, Officer Messer testified that he and the other officers observed a red Suburban SUV. This SUV fit the description of a large red or maroon SUV that had been involved in a shooting five days prior. Officer Messer and his partners followed the red Suburban as it traveled on Brighton Road. When the SUV reached Brightridge Street, it made a right turn without using a turn signal at which point the officers activated the police vehicle's lights and siren and conducted a mid-block traffic stop. Officer Messer reported that the red SUV promptly pulled into a parking space on the right side of Brightridge Street and that he approached the stopped vehicle on the passenger side with Officer Achille approaching on the driver's side. As Officer Achille approached the driver's side of the vehicle, he alerted Officer Messer to movement in the front seat of the vehicle. Officer Messer reported that he saw three fresh bullet holes near the rear passenger side of the vehicle.

Officer Messer testified that he recognized the front seat passenger of the vehicle to be Sean Thomas who had been arrested by the officers in the past six months for narcotics and firearms violations. At the same time that Officer Messer identified Sean Thomas, Officer Achille began speaking with appellant, D.G., who was the operator of the vehicle. Officer Messer stated that he and the other officers also knew appellant from previous encounters. An unknown third passenger was sitting in the rear of the vehicle. Officer Achille asked D.G. if he had obtained his driver's license and D.G. replied "no." Officer Achille then asked D.G. to step

out of the vehicle and D.G. complied with this request. Officer Messer testified that after D.G. exited the vehicle, he patted him down for weapons with negative results. Officer Messer then asked Sean Thomas to step out of the vehicle and patted him down for weapons, which also resulted in no weapons being found. The rear seat passenger was then removed from the vehicle.

Officer Messer testified that after the occupants of the vehicle were removed and patted down, he entered the vehicle from the passenger side door in order to conduct an inventory search prior to the vehicle being towed. Upon entering the vehicle, he observed that the cup holder was ajar as if it was manipulated in an "up" position instead of being flat. He then used his flashlight to illuminate the cup holder. Officer Messer observed a hole underneath the cup holder and saw a firearm sitting below the cup holder. Officer Messer alerted his partners to the discovery of the firearm. Subsequently, all three males were detained.

Officer Messer reported that the back seat passenger was identified as Tyler Goodnight, who had an active homicide warrant from Penn Hills Township and consequently, Tyler Goodnight was taken into custody. Appellant was also taken into custody and transported to Zone 1 because he was a juvenile. Sean Thomas was released. The officers gave the keys to the Suburban to Mr. Thomas so that Mr. Thomas could deliver the keys to appellant's mother so that the vehicle would not have to be towed and D.G.'s mother would not incur towing fees.

During cross-examination, Officer Messer explained that he entered the vehicle in order to conduct an inventory search of the vehicle because initially it was his intention to have the vehicle towed. In doing so, he shined the light from his flashlight on the cup holder and was able to view the firearm beneath the cup holder without manipulating or touching the cup holder.

Trial court opinion, 4/24/15 at 4-7 (citations and footnotes omitted).

> On November 12, 2014, D.G. was charged in a delinquency petition under the Juvenile Act, 42 Pa. C.S.A. § 6301 ***et seq.***, with Carrying Firearm without a License pursuant to 18 Pa. C.S.A. § 6106(a)(1); Possession of a Firearm by a Minor [] pursuant to 18 [Pa.] C.S.A. § 6110(a)(1); Drivers Required to be Licensed pursuant to 75 [Pa.] C.S.A. § 1501(a); and Turning Movements and Required Signals pursuant to 75 Pa. C.S.A. § 3334(a).
>
> On November 17, 2014, a pre-hearing conference was held and a hearing on the petition was scheduled for December 22, 2014. [The trial court] also ordered that D.G. be released from detention and placed on electronic-home monitoring (EHM) pending the adjudicatory hearing.
>
> On December 19, 2014 appellant filed a motion to suppress evidence. On December 22, 2014, the Attorney for the Commonwealth presented a Motion to Continue the Adjudicatory Hearing. The Motion for continuance was granted and the adjudicatory hearing was rescheduled for January 5, 2015. [The trial court] also scheduled a hearing on the Motion to Suppress Evidence for January 5, 201[5], immediately before the adjudicatory hearing.
>
> On January 5, 2015, a hearing on the Motion to Suppress Evidence was held. After the conclusion of the hearing and arguments by counsel on the motion to suppress, [the trial court] denied appellant's motion. D.G. admitted to the summary motor vehicle offenses of Drivers Required to be Licensed and Turning Movements and Required Signals. With respect to the charges of Carrying Firearm without a License and Possession of a Firearm by a Minor, appellant denied the allegations contained within the petition and the case proceeded to trial.

After the conclusion of the hearing and arguments by counsel, [the trial court] found that the Commonwealth had proven, beyond a reasonable doubt, that appellant committed the delinquent acts of Carrying Firearm without a License [] and Possession of a Firearm by a Minor. [The trial court] also accepted appellant's admission to the summary offenses of Drivers Required to be Licensed [and] Turning Movements and Required Signals. Due [to] the serious nature of the offenses and appellant's juvenile record, [the trial court] found that D.G. was also in need of treatment, supervision, and rehabilitation and he was adjudicated delinquent of the charge. Disposition was deferred until January 21, 2015. [The trial court] ordered that D.G. should remain detained pending disposition and that the Probation Officer make referrals for placement.

After a dispositional hearing on January 21, 2015, [the trial court] entered an order committing D.G. to the Adelphoi Village Anchor Residential Program. Appellant timely filed an appeal of the dispositional order on February 20, 2015. On March 16, 2015 appellant filed a concise statement of matters complained of on appeal.

*Id.* at 1-3 (footnote omitted).

The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on April 24, 2015. Therein, the court stated that it "erred in denying D.G.'s motion to suppress the firearm." (Trial court opinion, 4/24/15 at 10.) Specifically, the court found that the police did not conduct a proper inventory search of the vehicle and were not authorized to conduct such a search. (*Id.* at 11.)

Appellant raises the following issue for our review:

Whether the juvenile court erred in failing to grant D.G.'s Motion to Suppress Evidence when the search of his vehicle was not a lawful inventory search?

Appellant's brief at 5.

This Court's well-settled standard of review of a denial of a motion to suppress evidence is as follows:

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to [ ] plenary review.

> *Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 654 (2010) (internal citations and quotation marks omitted).

***Commonwealth v. Jones***, 121 A.3d 524, 526-527 (Pa.Super. 2015) (brackets in original).

In the instant appeal, both trial court, in its Rule 1925(a) opinion, and the Commonwealth concede that the inventory search conducted by the police was improper. (Trial court opinion, 4/24/15 at 10-11; Commonwealth's brief at 11.) The Commonwealth requests that we affirm the trial court's decision on any grounds, even if the reason has not been raised either here or at the trial court. (Commonwealth's brief at 12.) Specifically, the Commonwealth argues that the order denying the motion to suppress should be affirmed on the grounds that appellant did not have a reasonable expectation of privacy in the car, and, as a result, did not have standing to contest the search of the car, or, alternatively, the police properly conducted a protective sweep of the car.

Our cases indicate that we may affirm a lower court's order on any grounds supported by the record, so long as the trial court's decision is legally sound. ***Commonwealth v. Allshouse***, 36 A.3d 163, 182 (Pa. 2012), ***cert. denied***, ___ U.S. ___, 133 S.Ct. 2336 (2013), citing ***Commonwealth v. Parker***, 919 A.2d 943, 948 (Pa. 2007) (citation omitted); ***see also Commonwealth v. Miller***, 787 A.2d 1036, 1038 (Pa.Super. 2001), ***appeal denied***, 798 A.2d 1288 (Pa. 2002) ("As an appellate court, we may affirm by reasoning different than that used by the trial court") (citation omitted).

We agree with the Commonwealth that the record of the suppression hearing supports a finding that reasonable suspicion existed for a protective sweep of the vehicle. Our standard of review when reviewing protective sweeps of vehicles is as follows:

> In **Michigan v. Long**, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), and **Commonwealth v. Morris**, 537 Pa. 417, 644 A.2d 721 (1994), the respective Supreme Courts promulgated the test for determining whether a police officer may conduct a protective search of the interior compartment of a car for weapons. In **Long**, the United States Supreme Court applied the test announced in **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and held that a weapons search may be performed where an officer has reasonable suspicion that a firearm may be secreted in the car and that the search may encompass any area where a weapon could be hidden and accessible to the defendant in the vehicle. In **Long**, the High Court made the apt observation that "detentions involving suspects in vehicles are especially fraught with danger to police officers." **Long**, **supra** at 1047, 103 S.Ct. 3469. The **Long** Court's specific holding is that
>
>> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. "The issue is whether a reasonably prudent man in the circumstances would be warranted in the

> belief that his safety or that of others was in danger."
>
> ***Long***, ***supra*** at 1049-50, 103 S.Ct. 3469 (partially quoting ***Terry***, ***supra*** at 21, 88 S.Ct. 1868).
>
> In ***Morris***, ***supra***, our Supreme Court concluded that the ***Long*** standard comported with the Pennsylvania Constitution.

***Commonwealth v. Tuggles***, 58 A.3d 840, 842-843 (Pa.Super. 2012), ***appeal denied***, 69 A.3d 602 (Pa. 2013).

When viewed in a totality of the circumstances, our cases indicate that a "furtive hand movement" creates a reasonable suspicion that a weapon may be hidden within a vehicle to justify a protective sweep of that vehicle. ***Id.*** at 843. As noted by the ***Tuggles*** court, we found that reasonable suspicion existed based on the following:

> [T]he defendant performed a single action of patting his waistband, which is an area where weapons are frequently secreted. We concluded that police were justified in performing a search of that area for weapons when it was night in a high crime area, the defendant walked away upon viewing police, and police had received an anonymous tip that someone matching the defendant's description was armed.

***Id.*** at 844, citing ***Commonwealth v. Foglia***, 979 A.2d 357, 360-361 (Pa.Super. 2009) (***en banc***), ***appeal denied***, 990 A.2d 727 (Pa. 2010); ***see also In re O.J.***, 958 A.2d 561, 566 (Pa.Super. 2008) (***en banc***), ***appeal denied***, 989 A.2d 918 (Pa. 2010) (upholding protective sweep of a vehicle in which the stop occurred at night, the defendant did not immediately stop his car, the police observed hand movements indicating the possibility that

the defendant was attempting to secret a weapon, and the search was confined to the area of the defendant's hand movements).

Here, we find **O.J.**, **Foglia**, and **Tuggles** to be instructive. During the suppression hearing, Officer Messer testified that he and his partner, Officer Achille, initiated a traffic stop when the Suburban driven by appellant made a right turn from Brighton Road onto Brightridge Street without using a turn signal. (Notes of testimony, 1/5/15 at 8.) Officer Messer testified that the area in which he was patrolling, the North Charles area in the City of Pittsburgh, was identified as a "high impact trouble area," and several shots fired incidents had recently occurred. (**Id.** at 5-6.) The Suburban driven by appellant had matched the description of a car that was involved in a shooting five days prior, and Officer Messer observed three fresh bullet holes in the rear of the vehicle. (**Id.** at 7-8). As the officers were approaching the vehicle, Officer Achille alerted Officer Messer that he "saw movement in the front seat of the vehicle." (**Id.** at 8.)

Based upon a totality of the circumstances, we find that the police conducted a proper protective sweep of the vehicle. Accordingly, we find that the Commonwealth met its burden of production at the suppression hearing that appellant's constitutional rights were not infringed upon.

Order affirmed.

J. A04006/16

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/18/2016