J-S23024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERRAN ANDERSON | : | |
| | : | |
| Appellant | : | No. 1944 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 23, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002790-2022

BEFORE:   STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED OCTOBER 2, 2024**

Appellant, Derran Anderson, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for persons not to possess firearms, carrying a firearm without a license, and carrying firearms on public streets in Philadelphia.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. On the evening of February 14, 2022, Officer Zgleszewski was on duty near 1600 West Tioga Street in Philadelphia.  The officer explained that within this "two to three block radius, there's a lot of violent activity that goes on: shootings, homicides, numerous drug corners, a lot of drug activity."  (N.T.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

Suppression Hearing, 3/17/23, at 8-9). At approximately 8:33 p.m., Officer Zgleszewski observed Appellant's gray Honda Accord traveling eastbound. The Honda "had dark tinted windows on … all sides," the rear window "was completely covered in snow," and the driver's side brake light was "out." (*Id.* at 10-11). Based upon these observations, Officer Zgleszewski initiated a traffic stop by activating the lights and sirens on his police cruiser.

Appellant pulled over. "[A] few seconds after that," Officer Zgleszewski saw that "the vehicle appears to rock, appears like there might be movement inside the vehicle." (*Id.* at 12). Officer Zgleszewski then approached the driver's side of the vehicle and asked Appellant for his license and registration. There were no other passengers in the vehicle. Appellant provided the vehicle registration, but he stated that he left his driver's license at home. "[D]uring this interaction, [Appellant was] holding a cell phone and he's talking to an unknown individual." (*Id.* at 13). Appellant told the unknown individual, "I'm out front. I'm out front." (*Id.*) As Appellant spoke, the officer observed Appellant "breathing heavy." (*Id.*) Appellant's cell phone conversation concerned Officer Zgleszewski:

> I've had car stops in similar situations. And the next thing you know, they are in front of their house or [they're] out front of a friend's house and now I'm surrounded by friends and family, and they're upset as to why, you know, this person is being stopped[.]

(*Id.* at 14).

At that point, Officer Zgleszewski requested that Appellant step out of

the vehicle.  As Appellant exited, Officer Zgleszewski asked Appellant if he possessed a firearm or weapons.  Appellant initially mumbled "'hunh' or 'hmm,'" but he eventually denied possessing any weapons.  (**Id.** at 15). Appellant's response, "like he … didn't understand what [the officer] was saying," was concerning to the officer.  (**Id.** at 16).  For safety reasons, Officer Zgleszewski conducted a frisk of Appellant.  Shortly thereafter, the officer found a firearm tucked into the waist of the Appellant's pants.

On April 8, 2022, the Commonwealth filed a criminal information charging Appellant with carrying a firearm without a license, persons not to possess firearms, and carrying firearms on public streets in Philadelphia. Appellant filed a motion to suppress the firearm on June 3, 2022.  In it, Appellant alleged that he was subjected to a stop and frisk on less than reasonable suspicion.  The court conducted a suppression hearing on March 17, 2023.  At the conclusion of the hearing, the court provided an on-the-record statement of its factual findings.  (**See id.** at 51-55).  The court also denied the suppression motion.  Appellant immediately proceeded to a stipulated bench trial, and the court found Appellant guilty of all charges.  On June 23, 2023, the court sentenced Appellant to an aggregate term of six (6) to twelve (12) months' imprisonment, followed by three (3) years of probation.  Appellant did not file post-sentence motions.

Appellant filed a timely notice of appeal on July 19, 2023.  On July 20, 2023, the court ordered Appellant file a Pa.R.A.P. 1925(b) concise statement

of errors complained on appeal. Appellant filed his Rule 1925(b) statement on August 16, 2023.

Appellant raises one issue for this Court's review:

> Did the trial court err in denying [Appellant's] motion to suppress where, during a routine traffic stop, police frisked him without reasonable suspicion that he was armed and dangerous?

(Appellant's Brief at 3).

The following principles govern our review of an order denying a suppression motion:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Ford***, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018).

On appeal, Appellant acknowledges that an officer may briefly detain a suspect and conduct a limited frisk for weapons if the officer has reasonable

- 4 -

suspicion to believe that the suspect is armed and dangerous. Appellant insists, however, that the officer conducted an illegal frisk in this case because there was no reason for the officer to believe that Appellant was armed. Appellant contends that "Officer Zgleszewski's testimony at the hearing about [Appellant's] demeanor is not consistent with what was depicted on his body-worn camera footage." (Appellant's Brief at 13). Appellant emphasizes that the footage shows that Appellant "was not breathing heavy and there was no long pause in his response to the officer." (*Id.*) "Nothing in [Appellant's] demeanor or his responses objectively suggested criminal activity or dangerousness. [Appellant] was respectful, compliant, and cooperative." (*Id.* at 14). Moreover, Appellant argues that the frisk occurring in a high-crime area is not enough to create reasonable suspicion. Under the totality of these circumstances, Appellant concludes that the court should have granted his suppression motion. We disagree.

Contacts between the police and citizenry fall within three general classifications:

> The first [level of interaction] is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Bryant*, 866 A.2d 1143, 1146 (Pa.Super. 2005), *appeal*

*denied*, 583 Pa. 668, 876 A.2d 392 (2005) (quoting ***Commonwealth v. Phinn***, 761 A.2d 176, 181 (Pa.Super. 2000)).

An "investigative detention" is interchangeably labeled as a "stop and frisk" or a "***Terry*** stop." ***Commonwealth v. Brame***, 239 A.3d 1119 (Pa.Super. 2020), *appeal denied*, 666 Pa. 240, 251 A.3d 771 (2021).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.
>
> \* \* \*
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

***Commonwealth v. Jones***, 874 A.2d 108, 116 (Pa.Super. 2005) (internal citations omitted). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that [their] safety or the safety of others was in danger." ***Commonwealth v. Cooper***, 994 A.2d 589, 592 (Pa.Super. 2010), *appeal denied*, 608 Pa. 660, 13 A.3d 474 (2010).

"[R]oadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons

in the area surrounding a suspect." ***In re O.J.***, 958 A.2d 561, 564 (Pa.Super. 2008) (*en banc*), *appeal denied*, 605 Pa. 688, 989 A.2d 918 (2010).  To ensure officers' safety during a traffic stop, police may order both drivers and passengers to exit the vehicle, even without reasonable suspicion that criminal activity is afoot.  ***Commonwealth v. Malloy***, 257 A.3d 142, 150 (Pa.Super. 2021).  During a traffic stop, the officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions."  ***Commonwealth v. Wright***, 224 A.3d 1104, 1109 (Pa. Super. 2019), *appeal denied*, 661 Pa. 533, 237 A.3d 393 (2020).  "Further, 'if there is a legitimate stop for a traffic violation … additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions.'"  ***Id.*** (quoting ***Commonwealth v. Chase***, 599 Pa. 80, 93 n.5, 960 A.2d 108, 115 n.5 (2008)).

Instantly, Officer Zgleszewski testified that he initiated a traffic stop at night in a high-crime area after noticing Appellant commit multiple Motor Vehicle Code violations.  After Appellant's vehicle stopped, Officer Zgleszewski noticed it "rock," which indicated movement inside the vehicle.  (***See*** N.T. Suppression Hearing at 12).  Officer Zgleszewski approached the vehicle and spoke with Appellant, who could not produce a driver's license or other identification.  During this interaction, Appellant was preoccupied with talking to an unknown individual on his cell phone.  Appellant told the unknown

individual, "I'm out front.  I'm out front."  (**Id.** at 13).  Further, Appellant initially responded with a "mumble" when Officer Zgleszewski asked if he possessed a firearm.  (**Id.** at 15).  Based upon the foregoing, the suppression court found that the officer conducted a legal search of Appellant's person.  (**See** Suppression Court Opinion, filed 11/17/23, at 5).

Under the applicable standard of review, we cannot say that the suppression court committed legal error.  **See Ford, supra**.  Here, reasonable suspicion existed due to the combination of the following factors: 1) the stop occurring at night in a high-crime area; 2) the movement of Appellant's vehicle after it pulled over; 3) Appellant's inability to produce identification; 4) Appellant's ongoing cell phone conversation where he provided his location to the caller while breathing heavily; and 5) Appellant's initial, mumbled response when asked about the presence of firearms.  While any of these factors would not create reasonable suspicion on their own, the coalescence of these factors justified the officer's decision to conduct the frisk at issue.[2]

_____

[2] The record on appeal included the DVD containing Officer Zgleszewski's body camera footage from his interaction with Appellant.  This Court reviewed the footage, which confirmed the suppression court's findings of fact.  Initially, the officer is driving his vehicle, and the camera is focused on the steering wheel of the police cruiser.  Officer Zgleszewski then stops and parks his vehicle.  (**See** Commonwealth's Exhibit C-6 at 0:50).  Officer Zgleszewski did not immediately exit the police cruiser, briefly remaining in the driver's seat of the parked vehicle.  (**Id.** at 0:50-1:10).  The officer subsequently exited his vehicle and walked toward the driver's side of Appellant's vehicle.  (**Id.** at 1:10-1:21).  Although the body camera footage did not show that Appellant's vehicle began to "rock," it is possible that the rocking occurred while Officer

*(Footnote Continued Next Page)*

*See Jones, supra*. Moreover, even though Appellant complied with Officer

Zgleszewski's directives throughout the encounter, "cooperation with police

does not erase an otherwise valid belief that a defendant may have access to

a gun." *Commonwealth v. Watley*, 153 A.3d 1034, 1045 n.9 (Pa.Super.

_____

Zgleszewski was seated in the police cruiser with the camera focused on the steering wheel.

When Officer Zgleszewski reached Appellant's vehicle, the driver's side window was open, and Appellant was holding his cell phone. (*Id.* at 1:22). Appellant began reaching for his vehicle's paperwork just before Officer Zgleszewski requested Appellant's license and registration. (*Id.* at 1:23-1:27). Appellant presented the officer with the vehicle registration, but he explained that he left his driver's license at home. (*Id.* at 1:27-1:32). Officer Zgleszewski asked whether the vehicle belonged to Appellant, and Appellant responded that the vehicle belonged to his mother. (*Id.* at 1:32-1:36). Officer Zgleszewski asked whether Appellant had any identification. (*Id.* at 1:37-1:39). Appellant responded that he did not have identification, but his name was "Darren Perez." (*Id.* at 1:39-1:43). We observe that certain documents in the certified record list this name as an alias for Appellant. (*See* Subpoena, filed 2/15/22, at 1).

Appellant also explained that he was on the way to pick up a friend. (*See* Commonwealth's Exhibit C-6 at 1:45-1:50). As the officer examined the vehicle's registration, Appellant continued a conversation on his cell phone. (*Id.* at 1:50-2:06). Appellant told the person on the phone that he was "outside" and he "got pulled." (*Id.* at 1:55-2:14). Officer Zgleszewski then asked Appellant to step out of the vehicle. (*Id.* at 2:15-2:21). Appellant complied. (*Id.* at 2:23-2:25). The officer asked whether Appellant was carrying any weapons, and Appellant eventually responded in the negative. (*Id.* at 2:23-2:25). After stepping out of his car, Appellant's left hand tugged at the bottom of his hoodie. (*Id.* at 2:26-2:27). Officer Zgleszewski told Appellant to "relax," but Appellant placed his left hand in the pocket on the left-side of his hoodie. (*Id.* at 2:29). Officer Zgleszewski again asked Appellant if he was carrying any weapons. (*Id.* at 2:29-2:32). Appellant denied possessing weapons, but he kept his left hand in his pocket. (*Id.* at 2:32-2:34). When Appellant removed his hand from the pocket, the officer reached out to touch Appellant's waistband, lifted the front of Appellant's hoodie, and discovered the firearm. (*Id.* at 2:35-2:42).

2016), *appeal denied*, 641 Pa. 750, 169 A.3d 574 (2017) (quoting **Commonwealth v. Tuggles**, 58 A.3d 840, 844 (Pa.Super. 2012)). Because the record supports the suppression court's conclusions, Appellant is not entitled to relief. **See Ford, supra**. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  10/02/2024