J-A10024-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTOPHER PAJUSTE | : | |
| | : | |
| Appellant | : | No. 560 EDA 2025 |

Appeal from the Judgment of Sentence Entered January 22, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0005696-2024

BEFORE:   STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                    **FILED JUNE 3, 2026**

Christopher Pajuste ("Pajuste") appeals from the judgment of sentence imposed following his conviction for carrying a firearm on the streets of Philadelphia.[1]  We affirm.

We glean the following factual history from the evidence and testimony presented at the suppression hearing conducted in this matter.  In July 2024, Officer Brian Solomon ("Officer Solomon") was patrolling the streets of Philadelphia with his partner when he identified a vehicle traveling with "dark tint on all windows[,] including the front windshield."  N.T., 1/22/25, at 13-14.  As this tint prevented Officer Solomon from being "able to see anybody inside the vehicle[,]" he activated his vehicle's lights and sirens and initiated

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 6108.

a traffic stop. *Id*. at 14. When the vehicle came to a stop, Officer Solomon pulled up alongside it and used his vehicle's equipped "PA system" to instruct the "driver to roll down the windows." *Id*. Officer Solomon issued this command out of a concern for his own safety, as he still could not see the driver through the vehicle's window tint. In response, the driver of the vehicle "rolled down" only the front passenger-side window. *Id*. When Officer Solomon directed the driver to open his vehicle's remaining windows, the driver stated that they were broken. At this point, because both vehicles had stopped on a busy section of the road, Officer Solomon directed the driver "to pull over at the next block" to continue the traffic stop. *Id*.

En route to this location, Officer Solomon witnessed the vehicle stop at a red light and begin "shaking from right to left and back and forward as if somebody was in the car moving around." *Id*. at 15, 18. This motion indicated to Officer Solomon that the driver was "[p]ossibly concealing something or doing something inside the vehicle [that] wasn't normal to do." *Id*. at 19. When the light turned green, the shaking ceased and both vehicles continued on to the location of the traffic stop. There, Officer Solomon again utilized his vehicle's equipped PA system to command the driver to open his remaining windows. Although the driver this time opened both of his vehicle's rear windows, he did not open the driver-side window. This prompted Officer Solomon to exit his vehicle and approach on foot.

As Officer Solomon approached the vehicle, he could see through the vehicle's open rear windows that the driver was "moving around the vehicle, leaning forward, [and] looking right to left inside the vehicle." *Id*. When the officer reached the driver-side door, the remaining window opened to reveal the vehicle's sole occupant, Pajuste, sitting in the driver's seat. Given that Pajuste had lied to him about the operability of the vehicle's windows, as well as the officer's belief that Pajuste might have concealed contraband in the vehicle at the traffic light or just prior to his approach, Officer Solomon expressed concern for his own safety and directed Pajuste to exit the vehicle. Pajuste, who "was a little bit irate" as a result of the stop, did not immediately comply with the officer's command, and instead informed the officer that "he couldn't get out the driver side" of the vehicle because the door was broken. *Id*. at 22, 27. Despite Pajuste's claim that the door was broken, Officer Solomon opened Pajuste's door from the outside and allowed him to step out.

While outside of the vehicle, Officer Solomon placed Pajuste in handcuffs before handing him off to his partner. Officer Solomon then performed a safety "frisk" with respect to those areas within the vehicle that Pajuste, "as the driver[,] could readily reach[.]" *Id*. at 23-24. Officer Solomon inferred that this distance could encompass anywhere "from the driver seat to the back of the passenger seat" due to the way Pajuste's vehicle "was rocking and shaking" at the traffic light. *Id*. at 24. At the time of the search, Officer Solomon knew from his "training in dealing with [Pajuste's] particular make

and model of vehicle[,]" that its center console contained "voided areas" which an individual could access and use as storage. *Id*. As such, when Officer Solomon subsequently checked "around the center console where [Pajuste's] right arm would be" and found it to be "extremely loose[,]" he suspected that Pajuste had accessed it in this fashion. *Id*.

Upon finishing his inspection of the front interior of Pajuste's vehicle, Officer Solomon angled behind the driver's seat to inspect the rear of the center console, which he once more confirmed to be "very loose[.]" *Id*. Accordingly, with the belief that Pajuste could have "readily" accessed the voided area within the center console from the driver's seat by removing its "back side panel" with a key or by simply pulling on it manually, Officer Solomon used his handcuff key to pry it open. *Id*. at 24-25, 33. In doing so, the officer discovered a loaded "black Glock 45 nine[-]millimeter" firearm. *Id*. at 25. Notably, from the time the officer first inspected the center console to his discovery of the firearm, approximately only "a minute and a half" had passed. *Id*. at 25.

As a result of this discovery, Officer Solomon arrested Pajuste and the Commonwealth charged him with firearms not to be carried without a license and carrying a firearm on the streets of Philadelphia. In response, Pajuste filed an omnibus pretrial motion seeking to suppress the firearm from evidence. Pajuste claimed that because Officer Solomon had neither a warrant nor probable cause to support his search of the vehicle, he obtained the

firearm illegally. On January 22, 2025, the trial court held a hearing on the matter, during which it heard testimony from Officer Solomon and viewed footage from his body-worn camera. At the conclusion of the hearing, the trial court denied suppression. The matter then proceeded directly to a bench trial, whereupon the trial court found Pajuste guilty of carrying a firearm on the streets of Philadelphia,[2] and imposed a sentence of two years' probation. Pajuste filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Pajuste raises the following issue for our review: "Did police transform a frisk of . . . Pajuste's car into an illegal search by using a specialized tool to pry open the otherwise inaccessible bottom portion of the car's center console?" Pajuste's Brief at 1.

Pajuste's sole issue poses a challenge to the trial court's order denying suppression. Our standard of review for the denial of a suppression motion is well settled:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the

_____

[2] We clarify that although this Court has since held that section 6108 is unconstitutional as applied to an individual who **openly** carries a firearm without a license, this result has no effect on the statute's ability to "criminalize unlicensed **concealed** carry within the city of Philadelphia[,]" as is the case here. **Commonwealth v. Sumpter**, 340 A.3d 977, 981 (Pa. Super. 2025) (emphasis in original).

Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the court[ ] below are subject to our plenary review.

Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre[]trial motion to suppress.

*Commonwealth v. Carey*, 249 A.3d 1217, 1223 (Pa. Super. 2021) (citation omitted).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect private citizens from unreasonable searches and seizures by government officials. *See Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000) (*citing United States v. Mendenhall*, 446 U.S. 544, 551 (1980)). However, not every encounter between a law enforcement officer and a citizen constitutes a seizure warranting constitutional protections. *See Commonwealth v. Adams*, 205 A.3d 1195, 1199 (Pa. 2019). Indeed, "[t]he law recognizes three different levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention, often described as a *Terry*[3] stop;

_____

[3] *See Terry v. Ohio*, 392 U.S. 1 (1968).

and (3) a custodial detention." ***Commonwealth v. Jefferson***, 256 A.3d 1242, 1247 (Pa. Super. 2021) (citation omitted).

Pursuant to our state and federal constitutions, police may submit an individual to a ***Terry*** stop where they have reasonable suspicion or probable cause to believe that a violation of the Vehicle Code has occurred. ***See Commonwealth v. Feczko***, 10 A.3d 1285, 1290-91 (Pa. Super. 2010) (*en banc*). Relevantly, where a police officer observes that a vehicle's windows are so darkly tinted that he cannot see inside them, he has probable cause to believe that its driver is in violation of the Vehicle Code's prohibition on window tint. ***See Commonwealth v. Prizzia***, 260 A.3d 263, 268-70 (Pa. Super. 2021); ***see also*** 75 Pa.C.S.A. §§ 4107(b)(2), 4524(e)(1).

As a general rule, a member of law enforcement may not perform a warrantless search of a vehicle during a ***Terry*** stop absent both probable cause and exigent circumstances. ***See Commonwealth v. Alexander***, 243 A.3d 177, 181 (Pa. 2020). However, our Courts have consistently recognized a limited exception to this rule pursuant to ***Michigan v. Long***, 463 U.S. 1032 (1983). ***See Commonwealth v. Morris***, 644 A.2d 721 (Pa. 1994); ***see also Commonwealth v. Muhammad***, 289 A.3d 1078 (Pa. Super. 2023). In ***Long***, the United States Supreme Court applied the principles set forth in ***Terry*** to specifically permit a warrantless protective "search of the passenger compartment of a vehicle, limited to those areas in which a weapon may be placed or hidden[.]" ***Muhammad***, 289 A.3d at 1088-89 (*quoting **Long***, 463

U.S. at 1049) (quotation marks omitted). In the wake of **Long**, our Courts have since interpreted this holding to more broadly hold that a protective search "may encompass any area where a weapon could be hidden and accessible to" the suspected individual while in the vehicle. **Commonwealth v. Tuggles**, 58 A.3d 840, 842 (Pa. Super. 2012); **see also Muhammad**, 289 A.3d at 1090 (interpreting **Long** to conclude that members of law enforcement properly restricted their protective search of the defendant's vehicle "to those areas that [he] would have immediate control of and could contain a weapon").

"The standard for a valid **Terry** frisk and the standard for a valid protective vehicle search are identical[,]" as each turns on "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." **Commonwealth v. Cartagena**, 63 A.3d 294, 304 n.25 (Pa. Super. 2013) (*citing* **Long**, 463 U.S. at 1049-50; **Terry**, 392 U.S. at 27). Accordingly, to conduct a protective search of a vehicle, an officer must have "a reasonable belief based upon specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer to believe that [a] suspect is dangerous and . . . may gain immediate control of weapons." **Long**, 463 U.S. at 1049-50. Lastly, it is of no moment to this analysis that a detainee "is under police supervision outside the vehicle" during a protective search, as it is presumed "that a suspect who is not placed under arrest will be free to leave

and reenter his automobile[,]" whereupon "he will then have access to any weapons inside." ***See Commonwealth v. Buchert***, 68 A.3d 911, 913 (Pa. Super. 2013) (*quoting **Long***, 463 U.S. at 1051) (quotation marks omitted).

Pajuste argues that the trial court erred by denying his motion to suppress the firearm found within his vehicle. Pajuste initially concedes that: (1) "Officer Solomon legitimately stopped [him] to investigate whether his windows were tinted in violation of" section 4524(e)(1); and (2) a protective search of his car "was likely justified" given that the officer had observed his car "rocking back and forth at a traffic light as if he were moving around inside the vehicle[,]" and he had "misled the officer about the functionality of his windows and driver[-]side door." Pajuste's Brief at 9. However, Pajuste claims that these circumstances alone did not justify the "full search" that Officer Solomon thereafter performed on his vehicle. ***Id***.

Pajuste emphasizes that at the time of the stop, Officer Solomon had neither a search warrant for the vehicle, nor a combination of probable cause and exigent circumstances. Pajuste therefore asserts that Officer Solomon could only search those areas of his vehicle that he would have immediate access to while inside, or upon his return to the vehicle at the conclusion of the stop. However, Pajuste avers that Officer Solomon exceeded this permissible scope "by prying open an otherwise inaccessible compartment at the rear of the car's center console." ***Id***. at 9-10. To support this conclusion, Pajuste relies on this Court's analysis in ***Commonwealth v. Bozeman***, 205

A.3d 1264 (Pa. Super. 2019), which he claims "elaborates on those areas that may be legitimately searched during the protective frisk of a car." Pajuste's Brief at 10. Pajuste maintains that in **Bozeman**, "[t]his Court agreed that prying open [an] air vent" with a screwdriver found within a vehicle "went beyond the scope of a protective frisk" where the officer had only "noticed [the] screwdriver near the driver's door and pry marks on" the driver-side air vent. **Id**. at 11. Pajuste asserts that "**Bozeman** thus supports the conclusion that an officer's use of a specialized tool to pry open an otherwise inaccessible compartment of a car transforms a protective frisk into a full search." **Id**. This is the case, he suggests, "even when the tool required to access the compartment is close at hand[,] and . . . the compartment itself is easily within the driver's reach." **Id**.

In contrast to the above fact pattern, Pajuste avers that Officer Solomon's body-worn camera "makes clear" that the compartment in the rear of his vehicle's center console "was even harder to access than" that located behind the air vent in **Bozeman**, which had taken only "ten seconds" to access. **Id**. at 11-12. Accordingly, Pajuste maintains that despite Officer Solomon "checking inside the storage area of the console, shaking the rear of the console, reexamining the contents of the console, shaking the console from the side and rear, and examining the panels and cupholders adjacent to the console[,]" these efforts were insufficient to open the compartment containing the firearm. **Id**. (citations omitted). Pajuste instead highlights

- 10 -

that the officer only managed to discover the firearm after "several minutes" of searching, and only after he "entered the rear passenger area and used his handcuff key to pry open the console compartment by force[.]" *Id*. at 12.

In consideration of the above, Pajuste asserts that it was unreasonable for the trial court to conclude that he could have accessed the firearm either in the moments leading up to the stop, or immediately upon his return to the vehicle following the conclusion of the stop. Pajuste argues that such a determination directly contradicts the fact that the compartment containing the firearm "was functionally impossible to access unless one was in the rear passenger area of the car," as demonstrated by the officer's above-described search, as well as the fact that police did not find any "kind of specialized tool required to access the compartment" on his person or in his vehicle. *Id*. at 12-13. Consequently, Pajuste insists that because the firearm was not readily accessible at the time of the stop, the trial court should have suppressed it as the result of an illegal search.

The trial court determined that its order denying suppression was proper in light of the circumstances leading up to Officer Solomon's discovery of the firearm, reasoning as follows:

> Pajuste claims that the search of the vehicle was illegal because it "was unsupported by probable cause and a search warrant[,]" and that police had no basis for conducting a frisk of the vehicle for safety. This claim is without merit. The law is clear that a police officer may perform a warrantless search of the area within the driver's reach in order to ensure officer safety. Here, Officer Solomon's warrantless limited search of the area around Pajuste's driver's seat was reasonable under the totality of the

- 11 -

circumstances. The record shows that Pajuste was driving a vehicle that had heavily tinted windows, including the front windshield. When asked to roll down his windows, Pajuste claimed that they did not work and only the passenger[-]side window could be rolled down. While stopped at the red light, Pajuste's car was rocking and shifting around as though someone inside was moving around vigorously inside the vehicle, possibly to conceal contraband. After Pajuste pulled over, he eventually rolled down all the windows except the driver's[,] but then claimed that he could not exit because the driver[-]side door was broken. This also turned out to be false since Officer Solomon opened the driver[-]side car door from the outside. Officer Solomon described Pajuste's demeanor as "irate" when asked to exit the car. Based upon the totality of the circumstances, Officer Solomon had reasonable suspicion to believe that criminal activity may be afoot[,] and that a frisk of the driver's immediate reach area was necessary for officer safety.

Trial Court Opinion, 6/24/25, at 5 (unnecessary capitalization omitted).

After review, we determine the trial court's order denying suppression is supported by the record and free of legal error. Here, we reiterate that Pajuste does not challenge on appeal the fact that Officer Solomon had probable cause to initiate the underlying **Terry** stop, nor does he challenge the reasonableness of the officer's belief that a protective search was necessary. Instead, he challenges only that Officer Solomon's inspection of his vehicle exceeded the limits of a protective search — an assertion with which we disagree. The record is clear that Officer Solomon located the at-issue firearm in the rear of the vehicle's center console, which was well within Pajuste's reach as the driver of the vehicle. Additionally, when the officer inspected the center console's rear panel as part of his protective search, his training and experience with respect to the vehicle's make and model led him to reasonably

- 12 -

believe that Pajuste could have "readily" accessed the voided area underneath its "extremely loose" panel by simply pulling on it. N.T., 1/22/25, at 24-25, 33. Pursuant to this Court's interpretation of *Long*, this alone supports the trial court's determination that the officer's recovery of the firearm was within the scope of a lawful protective search. *See Muhammad*, 289 A.3d at 1090; *see also Tuggles*, 58 A.3d at 842. As such, we conclude that Pajuste's suppression claim is without merit.

Moreover, as it pertains to Pajuste's argument that *Bozeman* dictates that we grant him relief, we find his reliance on this case to be misplaced. We clarify that in *Bozeman*, the Commonwealth appealed from the trial court's determination that "the search of [Bozeman's] vehicle was not permissible as a search incident to arrest or a protective sweep because Bozeman was 'far removed' from his vehicle" at the time. *Bozeman*, 205 A.3d at 1277. Upon review, however, this Court preliminarily intuited that because police conducted this search after they had already *arrested* Bozeman following the discovery of narcotics on his person, they could have only supported it via a finding of probable cause. *See id*. at 1277 n.9. Such a conclusion inherently resulted from the fact that Bozeman's arrest obviated any need for a subsequent protective search of his vehicle, as he would no longer be returning to it at the conclusion of the stop. *See Long*, 463 U.S. at 1049-50.

Accordingly, when the *Bozeman* Court thereafter held that police had "the requisite probable cause" to search Bozeman's vehicle, and therefore

remove its air vent to recover a firearm, it did so without providing any consideration for whether this action would have also been permissible as part of a protective search, as it had already concluded that such a search could not have justifiably occurred. **Bozeman**, 205 A.3d at 1279. Consequently, we determine that **Bozeman** is inapplicable to the instant appeal.

For the reasons discussed above, we hold that Pajuste's sole issue is without merit, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/3/2026